## BENEFIT ASS'N OF RAILWAY EM-PLOYEES v. BELL.

### No. 6013.

Circuit Court of Appeals, Fifth Circuit.
Jan. 20, 1931.

Rehearing Denied Feb. 21, 1931.

London, Yancey & Brower and Jim C. Smith, all of Birmingham, Ala., for appellant.

J. K. Taylor, of Birmingham, Ala., for appellee.

Before FOSTER and WALKER, Circuit Judges, and HOLMES, District Judge.

HOLMES, District Judge.

The appellee, plaintiff in the court below, recovered a judgment against the appellant, defendant below, for the loss of both eyes under the double indemnity provision of an accident and illness insurance policy. The contract of insurance, so far as applicable here, provides indemnity in double the principal sum for the loss of both eyes resulting direct-ly and exclusively of all other causes from bodily injury sustained solely through external, violent, and accidental means, provided the loss results to the insured within 120 days from the date of the injury.

The issues of fact were resolved in favor of the plaintiff in the court below, after the jury had been fully and fairly charged by the court as to the law. Having been granted every instruction requested in its favor, except a peremptory one, the defendant took no exception to the charge of the court except as to the refusal to instruct the jury to return a verdict in its behalf. It being conceded here, at the argument and in the briefs, that there is in the case no dispute of law between counsel, this court is asked to reverse the judgment and set aside the verdict on the facts.

From the testimony the jury were justified in finding that, while the policy sued on was in force, the plaintiff, who was working as a car builder in railroad shops near Birmingham, Ala., was injured by accidentally striking himself in his left eye, or in his face near the left eye, with a heavy iron hammer with which he was working; that the hammer hit him on the cheek and also on the edge of the eyebrow; that the blow shattered the glasses which he was wearing, and some of the particles of broken glass went into his left eye, which went out immediately; and that he completely lost the sight of his right eye in about 60 days. Both plaintiff and his wife testified that prior to the accident his eyesight was good, and that he had never had any trouble with his eyes, plaintiff swearing that his eyes did not hurt him; that they were absolutely good; that he could see to do anything he wanted to do; and that he worked regularly prior to that time, supporting his family. His wife testified: "I will state to the jury that prior to the time that he came home with this accident to his eye his eyes were good. I never heard him complain of his eyes. He could write, do fine work, saw, and hunted all the time. He was a good rifle shot." Dr. Fox, a reputable and disinterested physician, who admittedly was qualified to give his opinion on the subject in controversy as an expert witness, testified, after an examination, it was his opinion that the plaintiff was totally blind in the left eye, and had only slight perception in the right; that he was practically blind. He further testified that it was possible for such blindness to have been caused by the injury. One of the doctors, an expert witness for the defendant, testified that whether a man was

blind, or the extent to which he could see, was something about which the patient alone could tell positively.

It is insisted that the plaintiff has failed to meet the admitted burden of proof, because no medically expert witness gave it as his opinion that the loss of sight was caused solely and directly from the external injury. But expert evidence is not necessary where the facts proven are such as to enable ordinary men to reach a natural and intelligent conclusion by reasoning logically from cause to effect. Courts must be practical and not pedantic in the administration of justice. If death follows immediately from a gunshot wound, and no other reasonable cause appears, it is a fair inference to say that the former was the result of the latter.

The theory of the defense was (1) that the insured suffered no such injury as he claimed; (2) that, conceding the lick in the eye or face with the hammer, the plaintiff's vision, which had always been poor, was not lost or impaired thereby, but that he could see as well after the accident as before it; and (3) that, conceding the blow and the subsequent total blindness, the loss of sight did not result directly and exclusively of all other causes from the bodily injury sustained solely through external, violent, and accidental means, as, at the time complained of by him, within the meaning of the policy, he had some disease or bodily infirmity which contributed thereto in a material degree.

Seven doctors took the stand as expert witnesses at the instance of the defendant, some of whom had examined plaintiff's eyes before and others after the accident, and some both before and afterwards. From their testimony and that of other witnesses, the jury might, if they had seen fit, have returned a verdict for the defendant on the ground that the plaintiff was a straight-out malingerer, or for the other reasons assigned as a defense. A splendid argument has been made here orally and in written briefs to support the view that such a finding would have been the correct one, but under the Constitution and our legal system such question is not for our determination. We cannot usurp the function of the jury and substitute our view for theirs. They found that the plaintiff's eyes, which were absolutely good before the accident, went out, one immediately and the other within 60 days after the injury, and that there reasonably appeared to be no other contributory cause for the result. These facts were sufficient to warrant the jury in finding that the injury was the sole, direct, and proximate cause of the plaintiff's loss of sight.

There being substantial evidence to support the verdict, and the trial court having committed no error of law, the judgment is affirmed.