[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2002
THOMAS K. KAHN
CLERK

No. 01-13608

_____

D.C. Docket No. 00-01607-CV-T-N

JESSIE D. COCHRAN, for herself and all
other persons from whom Defendant has
or will demand, under 42 USC 1395y (b) (2),
subrogation for medical payments out of
non-medical portions of their recoveries
from personal injury lawsuits or settlements,

Plaintiffs-Appellants,

versus

U.S. HEALTH CARE FINANCING
ADMINISTRATION, of the U.S. Department
of Health and Human Services, which operates the
Medicare program (MEDICARE),

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Middle District of Alabama

_____

**(May 16, 2002)**

Before CARNES and FAY, Circuit Judges, and HUNT*, District Judge.

_____

* Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia, sitting
by designation.

CARNES, Circuit Judge:

This appeal brings us a paradoxical twist on the conventional argument that exhaustion of administrative remedies should not be required where it would be futile. We have before us a litigant who contends that she should be allowed to circumvent the administrative remedies available to her not because resort to them would be futile, but because it might well be successful. She fears that the agency she has sued would give her administratively everything to which she claims to be entitled, thus mooting her lawsuit and depriving her of the opportunity for victory through litigation. Her position is that the likelihood – she says it is a near certainty – that she would succeed in the administrative appeals process should excuse her from having to resort to it. Believing that what this litigant fears is one of the principal reasons for and benefits of the requirement that administrative remedies be exhausted, we reject her novel argument.

## I. BACKGROUND

Jesse Cochran, a 70-year-old woman, was injured by an elevator door at the Tuscaloosa County Courthouse in Tuscaloosa, Alabama. She received medical treatment for those injuries, and is likely to require continued treatment for them. Her medical expenses, $ 7.659.88 at one point, have been paid by Medicare. She brought suit in state court against the company responsible for maintaining the

elevator that injured her, seeking to recover for her medical expenses as well as for her pain and suffering and mental anguish. She also sued the County, but the state court dismissed that part of her case. Once Ms. Cochran brought her state court lawsuit, the United States Health Care Financing Administration (HCFA)[1] sent her a letter informing her that it was statutorily subrogated to her right of recovery against the elevator company. HCFA also later sent two letters to her lawyer asserting its subrogation rights, and telling him that he was required to send HCFA a copy of his representation agreement with Cochran.

HCFA's subrogation rights are defined by the Medicare Act, 42 U.S.C. 1395 *et seq.*, and the regulations interpreting it. Section 1395y(b)(2), known as the Medicare Secondary Payer statute, makes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer; primary payers include the beneficiary's private insurer or the private insurer of someone liable to the beneficiary. This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay. In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered

---

[1]The HCFA has since changed its name to the Center for Medicare Services, but because HCFA was the name of the agency when Cochran brought her suit that is what we will call it.

services, even when another source may be obligated to pay, if that other source is not expected to pay promptly. 42 U.S.C. § 1395y(b)(2)(A)(ii). Medicare's conditional payments are "conditioned on reimbursement [to Medicare] when notice or other information is received that payment for such item or service has been . . . made." 42 U.S.C. § 1395y(b)(2)(B)(i).

The way the system is set up the beneficiary gets the health care she needs, but Medicare is entitled to reimbursement if and when the primary payer pays her. Among other avenues of reimbursement, Medicare is subrogated to the beneficiary's right to recover from the primary payer. 42 U.S.C. § 1395y(b)(2)(B)(iii). Medicare regulations extend that subrogation right to any judgments or settlements "related to" injuries for which Medicare paid medical costs, thereby casting the tortfeasor as the primary payer. 42 C.F.R. § 411.37 (2002). Those same regulations also provide that, when Medicare is reimbursed out of a judgment or settlement, the amount of money it takes is reduced by a pro-rata share of the "procurement costs," which include attorney's fees of the judgment or settlement. 42 C.F.R. § 411.37(c) (2002). That is why Medicare asks attorneys handling any related tort suits for its beneficiaries to supply the agency with a copy of the agreement setting out the share of the recovery they are to receive.

4

Once Cochran's lawyer received the letters from HCFA informing him of its statutory subrogation rights, he put Cochran's state court case, which was still in its pretrial stages, temporarily on hold.[2] He then brought this federal declaratory judgment lawsuit seeking to have the Medicare subrogation statute, or, alternatively, HCFA's regulations interpreting that statute, declared unconstitutional. The complaint, which sought class action status, alleged that it would be unconstitutional for Medicare to recover its costs from Cochran's entire personal injury settlement or judgment instead of from only that portion allocated – it did not say how or by whom – to medical expenses. The complaint also alleged that Cochran's lawyer was being forced into "involuntary legal servitude" by Medicare's statutory right to subrogation, that Medicare's requests for information on the case from the lawyer's files impermissibly interfered with the attorney-client relationship, and that Medicare should have to pay all of Cochran's attorney's fees in the case, rather than just the pro-rata share prescribed by current regulations.

The district court denied class certification early on, and Cochran does

_____

[2]After the district court ruled in this case, Cochran settled with the elevator company, which paid with a check made out to her, her lawyer, and Medicare. She does, however, still have an appeal pending in the state courts involving her claim against Tuscaloosa county, which was dismissed by the state trial court.

5

contest that denial.  The district court then granted HCFA's motion to dismiss on the grounds that Cochran's suit was not yet ripe.  Cochran contends that the court erred in failing to conduct an evidentiary hearing on the standing issue prior to ruling on HCFA's motion to dismiss, and that it erred in dismissing the suit for lack of ripeness.   HCFA, in addition to meeting Cochran's two contentions head on, also argues that her lawsuit should have been dismissed for lack of subject matter jurisdiction, because she brought it without first exhausting the administrative remedies  as required by the Medicare statute.[3]  It is this latter ground on which we affirm the district court's dismissal of Cochran's lawsuit.[4]

## II.  DISCUSSION

The Medicare statute requires that any lawsuit which seeks  "to recover on any claim arising under" it must first be brought through the Department of Health and Human Services'  administrative appeals process before it can be taken to

---

[3]HCFA did not make this argument to the district court, but it is not foreclosed from making it here,  because lack of subject matter jurisdiction may be raised at any time, Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999), and we may affirm for any reason supported by the record, even if not relied on by the district court, United States v. $121,000 in United States Currency, 999 F.2d 1503, 1507 (11th Cir. 1999).

[4]As a result, we have no reason to consider Cochran's contention that the district court erred  in dismissing her lawsuit without an evidentiary hearing on the ripeness issue, and in concluding that her claims were not yet ripe.

federal court. See 42 U.S.C. § 1395ii (adopting the Social Security statute 42 U.S.C. § 405(h), which strips federal courts of primary federal-question subject matter jurisdiction over Medicare claims); 42 U.S.C. § 1395ff(b)(1) (adopting the Social Security statute 42 U.S.C. § 405(g), which confers on federal courts the jurisdiction to hear Medicare claims after administrative review has been exhausted).

Until a claimant has exhausted her administrative remedies by going through the agency appeals process, a federal district court has no subject matter jurisdiction over her lawsuit seeking to "recover on any claim arising out of" the Medicare Act. This is true even when her claim includes a challenge to the constitutionality of the statute or the regulations interpreting it. See, e.g., Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 12, 120 S.Ct. 1084, 1092 (2000); Weinberger v. Salfi, 422 U.S. 749, 762 (1975).

HCFA has broad discretion to waive the right of subrogation when pursuing it "would defeat the purposes of the Medicare Act or the Social Security Act or would be against equity and good conscience." 42 U.S.C. § 1395gg(c). To exhaust her administrative appeals, Cochran would first have to request that the agency exercise its discretion to waive its right to collect from the proceeds of her tort suit the medical expenses it had paid on her behalf. If HCFA denied

7

Cochran's request for a waiver, she would then have to seek review of that denial at a hearing before an administrative law judge, and request review of any unfavorable ALJ decision by the Department of Health and Human Services Appeals Board.  42 C.F.R. §§ 405.720, 405.724.  During that process she could raise any constitutional objections she has to HCFA's subrogation practices. See Illinois Council, 529 U.S. at 12, 120 S.Ct. at 1093.  After Cochran exhausted her remedies through that administrative appeals process, she could bring her claims to federal court.  42 U.S.C. § 1395ff(b)(1). That assumes, of course, that she would lose administratively.  The problem according to Cochran is that she would not lose.

Cochran concedes that her claim is subject to the exhaustion requirement contained in the Medicare statute.[5]  Her one and only argument that she should be allowed to forego exhaustion of her administrative remedies is that the agency charged with carrying out the Medicare statute should not be allowed to give her

---

[5]Because of this concession, we do not have occasion to decide (and express no view on) this issue of first impression in our circuit:  whether a beneficiary's effort to avoid paying over to Medicare part of a tort judgment is subject to the administrative appeals process because it is a suit  "to recover on any claim arising under" the Medicare act. 42 U.S.C. § 1395ii (emphasis added); cf. United States v. Blue Cross and Blue Shield of Alabama, Inc., 156 F.3d 1098 (11th Cir. 1998) ( noting that previous Supreme Court cases interpreting the exhaustion requirement "involved suits brought by beneficiaries against the United States . . . to recover benefits not previously paid.")(emphasis added). Consistent with Cochran's concession, we assume for present purposes that it is.

administratively what she is seeking in litigation. At oral argument, with lectern-pounding zeal and room-filling volume, Cochran's attorney railed against the injustice of allowing the agency to buy off his client by waiving any subrogation rights it might have against her, thereby depriving her of the right to have its subrogation "scheme" exposed in a lawsuit and declared unconstitutional to the benefit of others who may find themselves in the same position. It is, he made abundantly clear, a matter of principle with his client and him. Matters of principle are important in the promulgation of law, but once it is promulgated law is the basis on which courts decide cases. And the law insists that Cochran exhaust her administrative remedies before bringing this lawsuit.

It is true that in some contexts, administrative exhaustion requirements are tempered by judge-made exceptions, chief among which are that exhaustion of administrative remedies sometimes is not required if resort to them would be futile, or if the remedy they offer is inadequate. Alexander v. Hawk 159 F.3d 1321, 1326 (11th Cir. 1998). Those judge-made exceptions do not apply, however, to a statutorily-mandated exhaustion requirement like the one involved in this case. Weinberger v. Salfi, 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975) (holding that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement ... may not be dispensed with merely by a judicial

conclusion of futility"); <u>Hawk</u> 159 F.3d at 1326 ("Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply"). Besides, no court has ever held, so far as we know, that there is a non-futility or fear-of-success exception to any exhaustion of administrative remedies requirement. We decline to be the first.

## III. CONCLUSION

Because Cochran failed to exhaust her administrative remedies before filing her lawsuit in federal court, the district court lacked subject matter jurisdiction over the case. Accordingly, the district court's dismissal of Cochran's lawsuit is AFFIRMED.