[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16076
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 9, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-02001 CV-HS-S

EDWIN L. THOMAS, as personal representative of the Estate
of James Edwin Thomas, a deceased minor,

                                        Plaintiff-Appellant,

                   versus

EVENFLO COMPANY, INC., a corporation,
TOYS R' US, INC.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 9, 2006)**

Before ANDERSON and DUBINA Circuit Judges, and VINSON,* District Judge.

PER CURIAM:

_____
*Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida,
sitting by designation.

The appeal in this case arises from the district court's decision to strike several opinions offered by an expert witness on behalf of the plaintiff-appellant, Edwin L. Thomas ("Thomas"), who filed the underlying lawsuit as representative of the Estate of James Edwin Thomas ("J.T."). In a brief memorandum opinion, the district court granted the defendants' motion for summary judgment after concluding that its previous exclusion of the opinions left Thomas with no evidence in support of his claims.

Thomas does not challenge the district court's conclusion regarding the sufficiency of the evidence beyond his expert's testimony. Instead, he challenges the district court's decision to exclude the expert's testimony, which formed the basis of the district court's summary judgment ruling. He also contends that the district court erroneously applied Rule 60(b) of the Federal Rules of Civil Procedure to his post-judgment Motion to Alter, Amend, or Vacate, which he contends was filed pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the reasons that follow, we affirm.

## I.  BACKGROUND  FACTS

At the heart of this case is the tragic death of five-month-old J.T., who was asphyxiated while left unattended sitting in a child restraint system ("CRS") manufactured by defendant Evenflo Company, Inc. ("Evenflo"), and sold by Toys

2

R' Us, Inc. (collectively "the companies"). Thomas, as representative of J.T.'s estate, sued the companies alleging various state law claims, including negligence, wantonness, breach of warranties, and violation of the Alabama Extended Manufacturers and/or strict liability doctrines.

To support the claims, Thomas propounded as an expert witness Gary R. Whitman, a senior engineer with ARCCA, Inc., which Whitman described at his deposition as an "engineering consulting firm specializing in the area of occupant crash protection." [Whitman Dep. at 16]. Whitman opined that the CRS was defectively designed and suggested that the seat's design allowed J.T. to maneuver his body in such a way as to obstruct his airway. Specifically, in relevant part, Whitman concluded as follows:

3. One side of the harness became disengaged and [J.T.] moved such that he had both of his legs on one side of the crotch strap. His body slid forward causing the harness tie to load against his neck. This loading resulted in his asphyxiation.

4. The [CRS] is defective and unreasonably dangerous due to its crotch strap being too long for its intended purpose of restraining the lower torso of a child of [J.T.'s] size. . . .

5. The [CRS] is defective and unreasonably dangerous due to its crotch strap being too far forward of the seat back for its intended purpose of restraining the lower torso of a child of [J. T.'s] size. . . .

\*\*\*

3

7. The [CRS] is defective and unreasonably dangerous because its design allows the carrier to be positioned such that the infant is placed in a near upright seated position.

8. The [CRS] is defective and unreasonably dangerous because it fails to incorporate an on-product warning cautioning the reader of the hazard created by placing an infant in a near upright seated position.

Letter from Gary R. Whitman to Dennis Goldasich, Esq. (July 1, 2003).

The district court struck the relevant opinions after concluding that they were unreliable. Based on this conclusion and after finding that no other evidence would support Thomas's claims, the district court granted summary judgment in favor of the companies. Subsequently, the district court denied Thomas's Motion to Alter, Amend, or Vacate the judgment upon concluding that the motion simply attempted to reargue issues previously addressed.

## II. ISSUES

1. Whether the district court abused its discretion by excluding Whitman's opinions.

2. Whether the district court erred when it granted summary judgment in favor of the companies.

3. Whether the district court abused its discretion when disposing of Thomas's post-judgment Motion to Alter, Amend, or Vacate.

4

## III. STANDARDS OF REVIEW

We review a district court's decision to exclude expert testimony for abuse of discretion and therefore defer to the district court's ruling unless it is "manifestly erroneous." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S. Ct. 512, 517 (1997), *quoted in Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1339-40 (11th Cir. 2003). We review decisions to grant or deny motions filed under Rules 59 or 60(b) of the Federal Rules of Civil Procedure for abuse of discretion as well. *See Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006) (Rule 59); *Jackson v. Crosby*, 437 F.3d 1290, 1295 (11th Cir. 2006) (Rule 60(b)), *cert. denied*, ___ S. Ct. ___, 75 U.S.L.W. 3172 (U.S. Oct. 2, 2006). We review the decision to grant the companies summary judgment *de novo*, "applying the same legal standards that controlled the district court's decision." *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001).

Furthermore, we may affirm the district court's judgment for any reason supported by the record. *See, e.g., Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 778 n.3 (11th Cir. 2002) (citing *United States v. $121,100 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993)).

## IV. DISCUSSION

The admissibility of expert testimony is governed by Rule 702 of the

Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

Fed. R. Evid. 702.[1]

Although the issue of reliability factored heavily into the district court's

decision and the parties' briefs,[2] whether Whitman's opinions would offer

---

[1] We have articulated the third prong as requiring the testimony to "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), *quoted in United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

"The party offering the expert has the burden of satisfying each of the[] three elements by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir.), *cert. denied*, 126 S. Ct. 419 (2005).

[2] In reviewing expert testimony for admissibility, courts are to judge reliability based on, among other factors:

> (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Fed. R. Evid. 702, advisory committee's note (discussing the year 2000 amendments to the rule and

assistance to the trier of fact is of greater import for the purpose of this opinion. At the very least, the testimony must help explain "matters that are beyond the understanding of the average lay person." *United States v. Henderson*, 409 F.3d 1293, 1304 (11th Cir. 2005) (affirming the district court's exclusion of expert testimony regarding the propriety of a police officer throwing his gun into his car when "[t]he issue in [the] case was not whether it was proper police procedure . . ., but whether or not [the police officer] actually did so"), *cert. denied*, 126 S. Ct. 1331 (2006).

Moreover, and also crucial to this opinion, the expert testimony's probative value must not be "substantially outweighed by its potential to confuse or mislead the jury," *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004), bearing in mind, of course, "the powerful and potentially misleading effect of expert evidence." *Id.*; *see also* Fed. R. Evid. 403. In addition, the opinions must not be "cumulative or needlessly time consuming." *Frazier*, 387 F.3d at 1263.

A.    Whitman's Qualifications

As an initial matter, we adopt the district court's well-reasoned conclusion that Whitman is an expert qualified to render opinions four, five, seven and eight,

---

the requirements of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993)).

which relate directly to the design of the CRS. The district court's failure to discuss specifically Whitman's qualifications to offer opinion three, however, which involves an opinion as to the cause of J.T.'s death, complicates our ability to review its decision for abuse of discretion. Regardless, the district court did not err in striking Whitman's opinion three; therefore, it is unnecessary to evaluate its decision regarding Whitman's relevant qualifications, and we make no holding in that regard.

B.     Opinion Three

The district court found Whitman's opinion three unreliable due to insufficient evidence establishing either the methodology Whitman utilized or whether Whitman correctly adhered to the methodology set forth in various articles he cited in his letter report. We affirm the district court's decision to strike opinion three but for reasons more fundamental to the principles governing the admissibility of evidence in the federal courts.

Whitman's opinion three is not based on personal knowledge. The first two sentences convey observable facts that Whitman, who was not present at the time of the incident, did not observe.[3] His knowledge of these circumstances was

---

[3]Thomas does not challenge the district court's decision to strike Whitman's opinion that the CRS's buckle was defectively designed despite overwhelming evidence that the buckle worked properly. Thus, that the harness "became disengaged" is simply a vague, common-sense conclusion

8

indirectly derived from the very same sources Thomas submitted in opposition to the companies' motion for summary judgment, including photographs of the incident scene, depositions, the coroner's autopsy report, and responses to discovery requests.[4]  The district court could have struck these statements for that reason alone.  Fed. R. Evid. 602 (requiring evidence that a witness has personal knowledge of the facts to which she testifies); *see also* Fed. R. Evid. 801-07 (discussing hearsay).

In addition, hearsay concerns aside, Whitman's recitation of the circumstances of J.T.'s death would have been cumulative and therefore would not have assisted the trier of fact.  In fact, the suggestion of Whitman's presence at the incident  would be misleading and unduly persuasive.  Fed. R. Evid. 403. Thomas's admission at oral argument that Whitman's sole objective was to demonstrate that the design of the CRS was unreasonably dangerous under the circumstances, not to reconstruct the incident actually causing J.T.'s death, further supports this conclusion.

---

based upon an inference that may or may not have been established by evidence in the record that the harness was buckled when J.T.'s caretaker left his presence and unbuckled when she returned. Moreover, the phrase unfairly suggests that the buckle was in fact engaged when Whitman could not possibly have known whether that was true.

[4]Thomas concedes that, "in forming his third opinion, Whitman relied in large part upon the coroner's report . . .." Appellant's Br. at 23.

The third sentence offers an opinion as to the cause of J.T.'s death. Nothing about Whitman's engineering background appears to qualify him to offer such an opinion. *See Charleston Nat'l Bank v. Hennessey* 404 F.2d 539, 541-42 (5th Cir. 1968)[5] (noting the lack of evidence that the coroner, who lacked medical training, was qualified to offer an opinion as to the cause of death). Moreover, to the extent medical expertise is unnecessary, as with the first three sentences, Whitman's conclusion could have been premised only upon information elsewhere available to the trier of fact, who would be free to draw similar or differing conclusions based upon the same evidence. *See, e.g., Benefit Ass'n of Ry. Employees v. Bell*, 46 F.2d 225, 226 (5th Cir. 1931) ("[E]xpert evidence is not necessary where the facts proven are such as to enable ordinary men to reach a natural and intelligent conclusion by reasoning logically from cause to effect.").[6]

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6]We do not mean to suggest that the evidence in the record establishes an inference that the "harness tie" caused J.T. to asphyxiate. We simply note that such evidence would be necessary to allow either Whitman or any other person reviewing the evidence to draw the conclusion Whitman offered. Notably, at oral argument, Thomas viewed the cause of death as undisputed, which further belies any suggestion that Whitman's testimony as to this fact would have been helpful.

Therefore, the district court's decision to strike opinion three, albeit for reasons different from those we express today, did not constitute an abuse of discretion.

## C. Opinions Four and Five

Opinions four and five are merely general conclusions regarding the effectiveness of the CRS. They offer no assistance to a trier of fact attempting to determine whether the alleged defect forming the basis for these exceedingly broad statements contributed in any way to J.T.'s death. In other words, general conclusions that the CRS was not effective in "restraining the lower torso of a child of [J.T.'s] size" simply does not suggest that the CRS's design would allow J.T. to reposition his legs in such a way that would cause him to asphyxiate.

The risk that these opinions would mislead the jury and unfairly prejudice the companies far exceeds any probative value, which we view as nil. *See, e.g.*, *Frazier*, 387 F.3d at 1266 (excluding an expert's opinion that the court found "imprecise and unspecific" and therefore "easily could serve to confuse the jury, and might well have misled it"); *see also* Fed. R. Evid. 403. Thus, the district court did not err in excluding opinions four and five.

## D. Opinions Seven and Eight

Thomas challenges the district court's decision to strike opinions seven and eight as unreliable,[7] but Thomas failed in his initial brief to challenge the district court's alternative, independent decision to strike them as irrelevant.[8] Consequently, we must affirm the district court's finding. *See*, *e.g.*, *Maiz v. Virani*, 253 F.3d 641, 674-75 (11th Cir. 2001) (holding that the court would not consider appellants' arguments when not raised in their initial brief on appeal).

E.     Rules 59 and 60

Thomas contends that the district court erred by treating his Motion to Alter, Amend, or Vacate the district court's grant of summary judgment as a Rule 60(b) motion instead of a Rule 59 motion. Thomas fails to explain the significance of this alleged error, however, and we see none.

Although a footnote in the court's opinion described Thomas's motion as falling within the scope of Rule 60(b), the court explicitly premised its denial of the motion on the axiom that "Rule *59(e)* motions may not be used to 're-litigate old matters, raise argument [sic], or present evidence that could have been raised

---

[7]Notably, Thomas began his argument by stating, "This appeal focuses solely on the second prong of the Rule 702 analysis." Appellant's Br. at 20.

[8]The district court found opinion seven irrelevant because the doll Whitman utilized to conduct the relevant test was shorter and heavier than J.T. Opinion eight would not assist the trier of fact, the district court concluded, because Whitman could not "say with any degree of certainty whether the caregiver would have heeded *any* warnings placed on the CRS and . . . had not done any testing regarding the same." Mem. Op. at 33 (emphasis added).

prior to the entry of judgment.'" Civil Action No. 02-cv-2001-VEH, Mem. Op. Denying Motion to Alter, Amend or Vacate Judgment at 2-3 (N.D. Ala. Oct. 3, 2005) (emphasis added) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)). Thomas's argument, then, challenges only an inconsequential typographical error in a footnote, and he has failed to demonstrate that this constitutes an abuse of discretion.

Therefore, Thomas cannot meet his burden of demonstrating that the district court abused its discretion in striking Whitman's opinions and, consequently, granting the companies summary judgment, which Thomas does not otherwise challenge. In addition, Thomas has failed to demonstrate that the district court abused its discretion in disposing of his post-judgment motion. Accordingly, we affirm the district court's orders and its grant of summary judgment.

**AFFIRMED.**