[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14406
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-01997-MSS-TBM


BARBARA J. HARVEY,

                                        Plaintiff-Appellant,

versus

FLORIDA HEALTH SCIENCES CENTER, INC.,
doing business as Tampa General Hospital,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 20, 2018)

Before MARTIN, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Barbara Harvey ("Mrs. Harvey") appeals the district court's final judgment in favor of the defendant, Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital ("the Hospital"). After the close of the evidence at trial, the district court granted the Hospital's renewed motion for judgment as a matter of law.

In doing so, the district court determined that the Hospital did not have a legal obligation to pay Mr. Harvey's medical expenses or to repay Medicare the medical expenses already paid on Mr. Harvey's behalf. The district court also determined that Mrs. Harvey's unjust enrichment claim under Florida law failed and was otherwise barred by res judicata. After thorough review, we affirm.

## I.    BACKGROUND

This case involves the medical expenses that Medicare paid for the treatment of Perry Harvey, a Medicare beneficiary, who later died from complications. The procedural history starts with a binding arbitration and then transitions to several lawsuits in state court. While at certain points Mrs. Harvey was the personal representative of Mr. Harvey's estate (the "Harvey Estate"), Mrs. Harvey individually brought this action against the Hospital.

## A.    The Estate's Malpractice Claim

On March 12, 2012, Mr. Harvey was admitted to the Hospital for severe pain. Mr. Harvey's condition worsened, and it was later determined that he had a

perforated bowel and had developed pressure sores and sepsis. On September 12, 2012, Mr. Harvey passed away at another healthcare facility.

Medicare paid $186,232.95 to the Hospital for its medical services to Mr. Harvey. Medicare also paid $432,882.87 to other healthcare providers. Thus, Medicare paid a total of $619,115.82 for Mr. Harvey's treatment.

On September 21, 2012, counsel for the Harvey Estate, Nathaniel Tindall, served the Hospital with a notice of intent to sue for medical malpractice under Florida law, which alleged that the Hospital was responsible for the development of Mr. Harvey's pressure sores. There was no malpractice claim as to treatment of the perforated bowel.

Ultimately, the Hospital and the Harvey Estate agreed to binding arbitration as to the amount of damages in the malpractice claim about the pressure sores. The Chief Arbitrator framed the damages issue this way:

> Whether or not a pressure sore caused the death of Mr. Harvey is not at issue in this proceeding. Rather, the sole issue for determination by this panel is the amount of damages to be awarded as a result of Mr. Harvey's wrongful death. Accordingly, evidence relating to causation is irrelevant in this proceeding, and will be excluded if offered by either party.

## B. Denial of the Estate's Motion to Add a Private Cause of Action under the Medicare Secondary Payer Statute

On July 20, 2013, Tindall, as counsel for the Harvey Estate, filed a motion for the arbitration panel to add another claim to the medical malpractice arbitration.

3

The Harvey Estate sought to add a private cause of action under the Medicare Secondary Payer ("MSP") statute to recover and to reimburse Medicare the $619,115.82 in medical expenses Medicare had already paid to the Hospital and other health care providers for the treatment of Mr. Harvey. Tindall argued that the Hospital's admission of liability in the arbitration proceedings created its legal responsibility to reimburse Medicare under federal law.

To the extent that a primary plan[1] or other entity (such as a tortfeasor) is legally responsible to pay for a Medicare beneficiary's medical expenses, the MSP statute requires that primary plan or other entity to reimburse Medicare for payments made on behalf of the beneficiary. See Glover v. Liggett Grp., 459 F.3d 1304, 1306–07 (11th Cir. 2006); Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 777–78 (11th Cir. 2002). This is the basis of the "secondary payer" system, which subordinates Medicare's payment duties to any other entity that "has or had a responsibility" to pay for a medical "item or service" on behalf of a Medicare beneficiary and thus makes that other entity the "primary" payer over Medicare. See 42 U.S.C. § 1395y(b)(2)(B)(ii).

---

[1]The MSP statute defines a "primary plan" as "a group health plan or large group health plan, . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance . . . ." and states that "[a]n entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by failure to obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2)(A).

Yet, to accommodate its beneficiaries, Medicare typically pays medical expenses up front, which is known as a "conditional payment."  See 42 U.S.C. § 1395y(b)(2)(B).  This payment is "conditional" because Medicare has a right to reimbursement—and thus asserts a statutory lien—where it is discovered that a primary plan or other entity was or is legally responsible to pay that Medicare beneficiary's medical expenses.  See id.  The MSP reimbursement statute allows Medicare to recover double its conditional payment by filing suit against the primary plan or other entity, but it also creates a similar private cause of action to encourage those aware of non-payment by a primary plan or other entity to enforce Medicare's rights.  Id. § 1395y(b)(2)(B)(iii), (b)(3)(A).

In the arbitration proceedings, the Hospital opposed the Harvey Estate's motion to add a private MSP claim for reimbursement of medical expenses to Medicare, arguing:

> In short, no [MSP] claim has accrued, nor will one accrue unless and until there is a legally binding resolution of this proceeding and a subsequent failure to repay the Medicare program.  Thus, Petitioner's analysis of whether the doctrine of res judicata might preclude him from pursuing an appropriate [MSP] claim after the conclusion of this proceeding is an exercise in pure speculation.  [The Hospital] intends to ensure that full repayment is made to the Medicare program at the conclusion of this proceeding, and therefore expects that neither this tribunal nor any other ever will be required to hear such a claim.

5

On August 26, 2013, the arbitration panel denied without prejudice the Harvey Estate's motion to the extent that the arbitration panel lacked jurisdiction to determine the accrual of claims under federal law.

On September 11, 2013, counsel Tindall separately notified the United States government that the arbitration panel would not consider a private cause of action under the MSP statute and thus urged the government to exercise its statutory rights to Medicare reimbursement and subrogation under 42 U.S.C. § 1395y(b)(2)(B). Thereafter, in its pre-hearing statement filed September 23, 2013, the Harvey Estate indicated that "[m]edical expenses are not at issue [in this proceeding] since [the Harvey Estate] . . . has deferred recovery right to the United States Government."

## C.    Arbitration Award

Subsequently, the arbitration proceeded, and the Harvey Estate did not claim or present evidence of Mr. Harvey's medical expenses.

Accordingly, the arbitration panel issued an award of $700,050.73 for only these items, with a line item of zero for medical expenses:

1. Funeral and probate expenses:
2. Present value of loss of net estate accumulations:
3. Loss of household services:
4. Past and future medical expenses (by stipulation of the parties):
5. Non-economic damages, awarded to Barbara J. Harvey for

6

a 100% loss of
capacity to enjoy life:

$0

$18,687.73

$307,663.00

$250,000.00

$123,700.00

The arbitration award expressly provided that no part of the award was for the payment or reimbursement of medical expenses to the Harvey Estate or to Medicare, stating:

> The parties have stipulated and the panel agrees that the Claimant having withdrawn her claim having to do with Medicare conditional payments and no evidence having been presented as to any medical expenses of any nature whatsoever, that <u>no portion of this award reflects payment or reimbursement or consideration of any medical expenses</u>. The matter of subrogation has not been raised nor considered by this panel.

After the arbitration proceeding, the Hospital's counsel sent an email to Tindall requesting payee information for the settlement checks. Tindall responded that the Hospital's counsel should make the checks out to his law firm's trust account.

## D.    Settlement Checks

On November 13, 2013, the Hospital's counsel sent Tindall three separate settlement checks and a letter explaining each amount. As explained below, the settlement amount of $700,050.73 was paid by separate checks for $619,115.82

7

and $80,934.91, and Tindall's attorney's fees were paid by a third check for $105,008.00.

The first check, in the amount of $619,115.82, was made payable to the trust account of Tindall's law firm and to Medicare. Although the Harvey Estate had not sought to recover medical expenses in the malpractice claim in the arbitration, the fact remained that Medicare had paid $619,115.82 in medical expenses for Mr. Harvey and could potentially assert a lien on the Harvey Estate's recovery from any tortfeasor causing those expenses. Accordingly, counsel for the Hospital's transmittal letter stated that this first check signified the amount of the arbitration award "potentially subject to Medicare's lien" and that it included Medicare as an additional payee "to comply with [the Hospital's] responsibility to protect Medicare's interests." The Hospital's counsel noted that: (1) the Estate was "free to negotiate with Medicare to reduce or eliminate the repayment obligation"; and (2) "[i]n light of the fact that no portion of the award represents payment for medical expenses, you may be successful in that regard."

The second check, in the amount of $80,934.91, was made payable to the trust account of Tindall's law firm and represented the portion of the award that "exceed[ed] the amount of Medicare's lien."

The third check, in the amount of $105,008.00, was also made payable to the trust account of Tindall's law firm and represented attorney's fees at 15% of the total award.

The letter from the Hospital's counsel concluded, "[P]lease feel free to contact me with any questions or should you wish to discuss this matter in more detail."

### E.     Tindall's Tender to Medicare

Upon receipt of the checks, on November 15, 2013, counsel Tindall endorsed the first check of $619,115.82 and mailed it to Medicare, along with a letter.  In that November 15 letter, Tindall represented to Medicare that the Hospital "vehemently denied liability [for Medicare conditional payments] in the arbitration proceeding," that only "after the filing of claim[s] for fraud" and the like had the Hospital "decided it would be in its best interest to pay the Medicare lien," and that "this is equivalent to a confession of judgment against [the Hospital]'s interest in that it has decided to no longer defend its position that it was not responsible for the Medicare Conditional payments."

Of course, as explained above, the arbitration award itself did not cover any medical expenses or any repayments due to Medicare under the MSP statute.  Yet Tindall did not object or return the check to the Hospital's counsel or request a different payee.  Rather, Tindall endorsed the check and sent it to Medicare.

9

Notably, Tindall did not tell Medicare that the arbitration proceedings had not involved and did not cover Mr. Harvey's medical expenses.

On December 9, 2013, the Medicare Secondary Payer Recovery Contractor ("MSPRC") sent a letter addressed to the Harvey Estate, copying Tindall and explaining: (1) Medicare had accepted $217, 893.49 of the $619,115.82 check that was sent; (2) it had applied this $217,893.49 amount to "the outstanding debt due to Medicare"; (3) the principal amount of the debt and interest were reduced to zero; and (4) the file was being closed.

Medicare later sent the $401,222.33 remainder of the $619,115.82 check to the trust account of Tindall's law firm as a procurement cost.  When a private party's recovery of medical expenses triggers Medicare's reimbursement rights, Medicare reduces the amount it seeks to take account of the private party's "cost of procuring judgment or settlement."  42 C.F.R. § 411.37.  Thus, rather than keeping the full $619,115.82, Medicare sent back to Tindall $401,222.33 for the cost of procuring the settlement.

## F.    State Litigation by the Harvey Estate

Before and around the time Tindall presented the $619,115.82 check to Medicare, he began filing a series of lawsuits in Florida circuit court on behalf of the Harvey Estate and against the Hospital.  These state lawsuits asserted numerous

legal claims and sought damages, including repayment of the entire $619,115.82 amount that Tindall had presented to Medicare, plus interest and attorney's fees.[2]

On November 13, 2013, the Harvey Estate filed an action against the Hospital asserting breach of contract, unfair trade practices, fraud, breach of fiduciary duty, and equitable subrogation (Case No. 13-CA-5301). It later voluntarily dismissed this action on November 21, 2013.

On November 26, 2013, the Harvey Estate filed a petition and amended petition in the Florida circuit court (Case No. 13-CA-12484), accompanied by a motion to compel payment for an unspecified amount from the Hospital's bank account and a motion for entry of final judgment. The Hospital opposed this relief on the ground that it had already paid the arbitration award in full. On June 19, 2014, the Florida circuit court in case number 13-CA-12484 entered an order confirming the arbitration award and granting partial final judgment as to its enforceability, but reserved, until consideration on the merits, the question of the extent to which the Hospital had already paid the award to the Harvey Estate. On November 14, 2014, the Harvey Estate voluntarily dismissed the petition "since no further relief, and/or enforcement of the arbitration award is being sought or will be sought in the future."

---

[2]The Hospital's brief on appeal mentions these cases seriatim, which appear to have numbered seven in total. We address only those discussed at trial in this case and the documents admitted into evidence.

11

On January 31, 2014, the Harvey Estate filed another complaint against the Hospital asserting breach of contract, which it later amended to include civil conspiracy, indemnity, civil theft, and conversion (Case No. 14-CA-1147).  On July 27, 2016, nearly a year after the complaint was filed in this federal lawsuit against the Hospital, the Florida circuit court in case number 14-CA-1147 granted summary judgment for the Hospital, citing res judicata, binding arbitration, and Florida's "two dismissal" rule.  In short, at least three lawsuits by the Harvey Estate against the Hospital for recovery of medical expenses (paid by Medicare) have not succeeded.

## G.    Mrs. Harvey's Federal Lawsuit

On August 27, 2015, represented by Tindall, Mrs. Harvey individually brought the current action for unjust enrichment against the Hospital in Florida circuit court.  Specifically, Mrs. Harvey alleged that she paid $619,115.82 to satisfy Medicare's lien, which she claimed the Hospital had a legal responsibility to pay and reimburse Medicare, and thus she had conferred a benefit on the Hospital.  In response, the Hospital removed the case to federal court and filed a motion to dismiss.

On September 22, 2015, Mrs. Harvey amended her complaint to add a Medicare private cause of action under 42 U.S.C. § 1395y(b)(3)(A), including

allegations that, during the original arbitration proceeding, the Hospital made representations that it would "reimburse Medicare without delay."

Each party then filed a motion for summary judgment, both of which the district court denied. In its order denying these motions, the district court ruled that, as to the Medicare private cause of action, there were triable issues of fact "whether [the Hospital] is a primary payer in light of its representation to the arbitration panel" and "what [the Hospital] meant by stating its intention to ensure that full repayment is made to the Medicare Program." As to the unjust enrichment claim, the district court found there were triable issues of fact "whether [the Hospital] is a primary payer" and "whether [Mrs. Harvey] conferred a benefit on the Hospital when she satisfied the Medicare Lien." Thereafter, Mrs. Harvey retained new counsel in this action.

## H.    Trial

This case was tried before a jury on September 25 and 26, 2017. Mrs. Harvey called only two witnesses—herself and counsel for the Hospital.

First, Mrs. Harvey testified that she agreed to binding voluntary arbitration after her husband's death and that the arbitration panel awarded around $700,000, not including any medical expenses. According to Mrs. Harvey, both parties agreed not to include medical expenses in the arbitration award. Mrs. Harvey also testified that she did not abandon the Harvey Estate's claim against the Hospital for

13

medical expenses, but rather Medicare had not billed the Harvey Estate, and thus she did not make the claim in the arbitration.

Mrs. Harvey directed her former attorney, Tindall, to send the $619,115.82 settlement check to Medicare because she did not want to "mess with the government," believed that amount to be due to Medicare, and saw no other option. Mrs. Harvey acknowledged that Medicare refunded around $400,000 of the tendered $619,115.82 check as "procurement costs" for her pursuing the malpractice claim against the Hospital. Mrs. Harvey also admitted that she authorized Tindall to file subsequent lawsuits on behalf of the Harvey Estate against the Hospital, and that Tindall kept the Medicare refund in his law firm's trust account to "finish up all of this litigation." On cross-examination, Mrs. Harvey conceded that the only basis for her opinion about an agreement not to address medical expenses in the arbitration proceeding was what Tindall had told her.

Second, counsel for the Hospital testified that there was no agreement during the arbitration as to Mr. Harvey's medical bills or medical expenses. Counsel for the Hospital admitted that he included Medicare as a payee on the $619,115.82 settlement check solely to protect the Hospital's interests as to a potential Medicare lien. As to representations of "full repayment to Medicare" made during the arbitration proceeding, counsel for the Hospital testified: (1) any statements he

made were before the Harvey Estate later withdrew its claim for medical expenses against the Hospital; and (2) at that time, before the withdrawal of the Harvey Estate's medical expense claim, the Hospital had expected to be a primary payer.

At the close of Mrs. Harvey's case-in-chief, the Hospital moved for judgment as a matter of law because, it claimed, Mrs. Harvey presented no evidence that the Hospital was legally obligated to pay medical expenses to the plaintiff Mrs. Harvey, or that the Hospital had become a primary payer, and that res judicata otherwise precluded her claim for unjust enrichment. The district court then took the motion under advisement.

On the second day of trial, the Hospital declined to call any witnesses and renewed its motion for judgment as a matter of law. Mrs. Harvey moved for a directed verdict. The district court ultimately granted the Hospital's renewed motion for judgment as a matter of law.

As to the Medicare private cause of action, the district court found there was insufficient evidence to establish that the Hospital was a payer "or primary plan by way of a settlement or other means" or that it had "accepted responsibility to reimburse Medicare." Specifically, it indicated that, since "there was no judgment establishing [the Hospital] as a primary plan" or payer, Mrs. Harvey had to establish the Hospital had assumed such a status "by way of a settlement or by other means." In this regard, the district court found that Mrs. Harvey's

15

testimony—i.e., that Tindall told her about an oral agreement with the Hospital—was not competent evidence of the Hospital's assuming payer status by "settlement, judgment or other means," and thus did not give rise to liability under the MSP statute.

As to Mrs. Harvey's unjust enrichment claim, the district court found there was likewise insufficient evidence to establish that the Hospital had a legal obligation to repay Medicare and that the claim was otherwise barred by res judicata. The district court entered judgment in favor of the Hospital. This appeal followed.

## II.    DISCUSSION

We review <u>de novo</u> a district court's ruling on a renewed motion for judgment as a matter of law. <u>Myers v. TooJay's Mgmt. Corp.</u>, 640 F.3d 1278, 1287 (11th Cir. 2011); <u>Aronowitz v. Health-Chem Corp.</u>, 513 F.3d 1229, 1236–37 (11th Cir. 2008). Judgment is appropriate where the district court finds there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. Fed. R. Civ. P. 50(a). In this analysis, we examine all evidence in the light most favorable to the non-moving party. <u>Aronowitz</u>, 513 F.3d at 1236–37. The district court entered judgment as a matter of law in favor of the Hospital on Mrs. Harvey's two claims. We discuss them in turn.

## A.    Private Cause of Action under the MSP Statute

16

On appeal, Mrs. Harvey argues that, in agreeing to arbitrate the wrongful death claim, the Hospital implicitly admitted liability for the medical expenses already paid by Medicare and therefore assumed a legal responsibility to repay Medicare. We first review the Medicare reimbursement statute and then why the district court did not err.

As mentioned in the background of the case, the MSP statute ensures that Medicare does not pay for items and services that are covered by a primary plan or other entity. Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 832 F.3d 1229, 1234 (11th Cir. 2016); see 42 U.S.C. § 1395y(b)(2). Although Medicare typically pays first, the MSP statute, in effect, makes Medicare the payer of "last resort" for covered treatment. Humana Med. Plan, Inc., 832 F.3d at 1234.

The statute allows Medicare to make conditional payments on behalf of a covered patient, subject to certain mandatory reimbursement by a primary plan or certain entities:

> a primary plan, and an entity that receives payment from a primary plan, shall reimburse [Medicare] for any payment made by [Medicare] under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). A primary plan or entity's responsibility for such payment may be demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release . . . of payment for

17

items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Id.

To enforce these reimbursement rights, the MSP statute gives the federal government, Medicare, an independent cause of action to recover double damages in the amount of its conditional payment "against any or all entities that are or were required or responsible . . . to make payment with respect to the same item or service (or any portion thereof) under a primary plan," as well as subrogation rights for any individual or entity's right to payment for these services under a primary plan. Id. § 1395y(b)(2)(iii)–(iv).

The MSP statute also grants a similar, private cause of action for double damages where "a primary plan . . . fails to provide for primary payment." See id. § 1395y(b)(3)(A). Aside from private insurers, such a failure typically occurs in the personal injury context where a Medicare beneficiary receives a judgment or settlement against a tortfeasor, which, when inclusive of medical expenses, triggers a reimbursement right for Medicare to the extent of its prior conditional payment of medical expenses. See Glover v. Liggett Grp., 459 F.3d 1304, 1309–1310 (11th Cir. 2006). Under these circumstances, the Medicare beneficiary may then sue the primary payer, or tortfeasor, for failing "to pay Medicare its share." Id.; see 42 U.S.C. § 1395y(b)(3)(A). However, this claim requires the plaintiff to establish the

"alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs." Glover, 459 F.3d at 1309.

In this case, the district court correctly concluded that there was insufficient evidence to establish the Hospital was a primary payer for purposes of the MSP reimbursement statute. Had the Harvey Estate recovered from the Hospital medical expenses as a part of the arbitration award, the Hospital then would have become the primary payer for purposes of the MSP statute. See 42 U.S.C. § 1395y(b)(2)(B)(ii) (noting payment responsibility is demonstrable by a judgment ordering payment for the cost of medical services); Glover, 459 F.3d at 1309–1310 (explaining how a defendant's responsibility to pay for a Medicare beneficiary's medical expenses may be demonstrated by a judgment against the defendant). The responsibility to repay Medicare was contingent upon the Harvey Estate's receiving a damages award against the Hospital for the medical expenses of Mr. Harvey. But the Harvey Estate never did that.

Indeed, the Harvey Estate agreed that the arbitration award did not cover the medical expenses of Mr. Harvey. Notably, Medicare had paid not just $186,232.95 to the Hospital but also paid $432,882.87 to other health care providers, for a total of $619,115.82. There has never been a judgment entered against the Hospital for any of those medical expenses of Mr. Harvey.

19

In the absence of that, Mrs. Harvey was required to prove that the Hospital (1) voluntarily assumed legal responsibility as the primary payer for Mr. Harvey's medical expenses or (2) agreed to be liable for medical expenses and sought to address the amount in another forum. However, the trial evidence shows the Hospital never assumed that payment obligation.

First, counsel for the Hospital explicitly testified that there was no such agreement or promise.

Second, even Mrs. Harvey could testify only that Tindall told her about an oral agreement with the Hospital that medical expenses would not be included in the arbitration proceeding, but would be addressed in a separate action. On cross-examination, Mrs. Harvey admitted that her only basis for this opinion was what Tindall told her. In any event, Tindall filed several separate lawsuits against the Hospital but prevailed in none of them. Mrs. Harvey presented no evidence of an agreement with the Hospital to pay Mr. Harvey's medical expenses or any state court or other judgment against the Hospital for Mr. Harvey's medical expenses.

At trial, Mrs. Harvey's counsel was left to point to the Hospital's statement in an opposition brief before the arbitration panel that it intended "to ensure that full repayment is made to the Medicare program at the conclusion of this proceeding." However, at trial, counsel for the Hospital testified that this statement was made before the Harvey Estate withdrew from the arbitration its

20

claim for medical expenses.  This testimony by counsel was never contradicted.

In any event, at the conclusion of the proceeding, the arbitration award noted that

the Harvey Estate had withdrawn its claim seeking Medicare reimbursement and

that neither party presented evidence "as to any medical expenses of any nature

whatsoever."  At bottom, based on the evidence at trial, Mrs. Harvey has shown no

error in the district court's entry of judgment in favor of the Hospital on her

Medicare private cause of action.[3]

## B.    Unjust Enrichment under Florida Law

Mrs. Harvey similarly contends that her tendering the $619,115.82

settlement check to Medicare unjustly enriched the Hospital.  For the following

reasons, we disagree.

To state a claim for unjust enrichment under Florida law, a plaintiff must

show: (1) it has conferred a benefit on the defendant; (2) the defendant voluntarily

accepted and retained that benefit; and (3) the circumstances are such that it would

be inequitable for the defendants to retain the benefit without paying the value

thereof.  Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012)

(citations omitted); see Am. Safety Ins. Serv., Inc. v. Griggs, 959 So. 2d 322, 331

(Fla. Dist. Ct. App. 2007) (separating "knowledge of the benefit" as a separate

---

[3]While the parties do not raise this issue, we note that the Harvey Estate, not Mrs. Harvey, had the claim for the medical expenses of Mr. Harvey.  Thus, there seems to be a threshold issue of whether Mrs. Harvey or the Harvey Estate is the proper plaintiff in any event. Because the parties do not raise or address that issue, neither do we.

legal element and noting that "unjust enrichment is an action at law, not in equity"). As to the first element, the plaintiff must show it "directly conferred" a benefit on the defendant. Griggs, 959 So. 2d at 331; see Extraordinary Title Servs., LLC v. Fla. Power & Light Co., 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009).

Here, the district court properly concluded that Mrs. Harvey failed to present sufficient evidence for a jury to conclude that she conferred a "direct" benefit on the Hospital. As discussed above, the record evidence did not establish any agreement by the Hospital to pay Mr. Harvey's medical expenses. Without demonstrating that the Hospital had a legal responsibility to pay Mr. Harvey's medical expenses, Mrs. Harvey cannot show that she conferred a benefit on the Hospital by her reimbursing Medicare for those expenses. See also Virgilio, 680 F.3d at 1337 (finding no benefit conferred where the defendant was not a party to the plaintiffs' service contract with an intermediary); Extraordinary Title Servs., LLC, 1 So. 3d at 404 (finding no direct benefit was conferred on parent company where the plaintiff contracted with and paid a subsidiary). As it stands, Medicare was the only beneficiary of this transaction. For the same reasons the Hospital did not assume responsibility under the MSP statute, it had no payment obligation upon which Mrs. Harvey could confer a benefit. Thus, we affirm the district court's judgment on this ground as well.

22

Because we affirm the district court's conclusion on the merits, we need not decide whether the doctrine of res judicata applied to Mrs. Harvey's claim for unjust enrichment.  See Rowe v. Schreiber, 139 F.3d 1381, 1382 n.2 (11th Cir. 1998) ("We may affirm a decision on any adequate grounds . . . .").[4]

## III.    CONCLUSION

In conclusion, we affirm the district court's grant of judgment as a matter of law on behalf of the Hospital as to both Mrs. Harvey's private cause of action under the MSP statute and her unjust enrichment claim under Florida law.

**AFFIRMED.**

---

[4]We reject Mrs. Harvey's argument that the Hospital was required to exhaust administrative remedies with the Department of Health and Human Services ("H&HS") before it could even defend itself in this case.  Administrative exhaustion requirements of the Social Security Act may apply when a party brings a lawsuit against Medicare through H&HS.  See Cochran, 291 F.3d at 779 (affirming district court's dismissal of an action against Medicare where the claimant failed to exhaust administrative remedies).  Here, however, Mrs. Harvey is not suing Medicare or challenging a determination by Medicare, nor is the Hospital.