Steven **SHAPIRO**, Plaintiff,

v.

**RIDDLE & ASSOCIATES, P.C.,** Defendant.

**No. 02 Civ. 2978(LAK).**

United States District Court, S.D. New York.

Jan. 15, 2003.

---

Lawrence Katz, Katz & Kleiman, for Plaintiff.

George N. Tompkins, III, Schnader Harrison Segal & Lewis LLP, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action for alleged violation of the Fair Debt Collection Practices Act (the "FDCPA").[1] There are no issues of fact, and the parties have cross-moved for summary judgment. Plaintiff has moved also for class certification. In view of the disposition of the cross-motions, there is no need to address the class certification motion.

### Facts

Defendant Riddle & Associates, P.C. ("Riddle") was retained to recover $309.76 owed to its client by plaintiff Steven Shapiro pursuant to a contract that provided, *inter alia,* that:

"[i]f we are required to use a collection agency or attorney to collect money that you owe to us ..., you agree to pay the reasonable cost of collection or other action. These costs might include, but are not limited to, the costs of the collection agency, reasonable attorney fees, and court costs."[2]

On or about April 30, 2001, Riddle sent plaintiff a letter containing the following language:

"If you want to resolve this matter without a lawsuit, you must either pay the Total Amount Due listed above (unless it has already been paid) or call our firm at 1–800–225–5050 and work out arrangements for payment. If you do neither of these things, our client will be entitled to file a lawsuit against you for collection of this debt. No decision has been made to file a law suit. If legal action is taken and a law suit is filed, it will be handled by an attorney licensed in your state."

"Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume it is valid. If you do dispute it—by notifying our firm in writing to that effect—we will, as required by law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, we will furnish you with that information too."

"The law does not require our client to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires our firm to suspend our efforts (through litigation

---

**1.** 15 U.S.C. § 1692 *et seq.*

**2.** Def. 56.1 St. ¶¶ 3, 5, 10.

or otherwise) to collect the debt until we mail the requested information to you." "This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector." [3]

The letter sought recovery of, in addition to the debt owed by plaintiff, a $98 attorney/collection cost.[4]

### Discussion

Plaintiff advances two theories on which, he claims, the letter violated the FDCPA. First, he maintains that the inclusion of the $98 attorney/collection cost charge constituted a false representation that the plaintiff was subject to a collection charge that was, in fact, illegal. Second, he argues that the letter, taken as a whole, violated the FDCPA's validation provision, which requires notice to the debtor of the debtor's right to seek validation of the debt.[5] Neither theory has the slightest basis in law or fact.

### The Collection Charge

 The FDCPA provides in relevant part that it is unlawful for a debt collector such as Riddle to collect "any amount (including any ... fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt* or permitted by law." [6] In this case, the agreement between plaintiff and Riddle's client explicitly permitted the creditor to collect a reasonable fee if it were required to employ a collection agency or attorney, as it obviously was.[7] Thus, the only conceivable line of attack open to plaintiff—and it is far from clear that plaintiff seeks to use it—would be a contention that the $98 charge was unreasonable.

In this case, the undisputed evidence shows that Riddle, prior to sending the letter, examined the agreement with plaintiff to ensure that charging a fee was authorized,[8] screened the group of accounts (including plaintiff's) that were referred for collection in order to ensure that they met criteria necessary for inclusion in its information system and that each involved a minimum overdue balance,[9] screened the accounts to ensure that partial payment had not been made,[10] conducted bankruptcy, change of address and current phone number checks,[11] and had a compliance attorney review both the account and the collection letter.[12] All of this takes time and costs money, as do the insurance premiums that Riddle pays to cover its business and the administrative and technical staffs it employs and the information systems it operates.

It would be plaintiff's burden at trial to establish that the $98 charge was unreasonable. As defendant has put plaintiff's ability to sustain that burden in issue, defendant is entitled to summary judgment on this issue unless plaintiff has offered admissible evidence sufficient to raise a genuine issue of fact as to reasonableness.[13] This plaintiff has not done.

---

**3.** *Id.* ¶ 7.

**4.** *Id.* ¶ 8; Cpt. Ex. A.

**5.** Pl. Mem. 3–6. Plaintiff's memorandum could be read to raise a related claim that the notice violates § 1692e(5) by threatening to commence litigation when Riddle had no such intention. Pl. Mem. 6.

**6.** 15 U.S.C. § 1692f(1) (emphasis added).

**7.** Def. 56.1 St. ¶ 10.

**8.** Riddle Aff. ¶ 3.

**9.** Wood Aff. ¶ 6.

**10.** *Id.* ¶ 8.

**11.** *Id.* ¶ 11.

**12.** *Id.* ¶ 12.

**13.** *E.g., Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993)

Nor do the cases upon which he relies support his position in any other respect.[14]

*Debt Validation Notice*

█ Plaintiff claims also, in substance, that the collection letter violated Section 1692g's validation provision—which requires notice to the debtor of the debtor's right to seek validation of the debt—because the references to possible litigation overshadowed the notice and would lead the debtor to believe that seeking validation or disputing the debt would be futile and could not stave off litigation.[15] He relies on *Savino v. Computer Credit Inc.*[16]

As *Savino* makes clear, when determining whether a debt collector's notice violates Section 1962g, a court is to apply "an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector."[17] "When a notice contains language that overshadows or contradicts other language informing a consumer of her rights, it violates the Act."[18]

Here, it is undeniable that the collection letter clearly informed the debtor of his rights under Section 1962g. The question is whether the references to litigation would have left the "least sophisticated consumer" uncertain as to his or her rights under the FDCPA. This Court is satisfied that the letter, read as a whole, would not have done so.

The letter began by advising the debtor that he had to do one of two things if he "want[ed] to resolve this matter without a lawsuit."[19] It then went on to say that if he did neither, Riddle's client would "be entitled to file a lawsuit."[20] If the letter had stopped there, it might well have been at least confusing if not downright misleading, as it would have been entirely reasonable to construe the letter as meaning that Riddle's client would be entitled to, and in fact would, sue if the debtor did not take one of the two options presented—make payment or call to arrange for payment. But the letter did not stop there. The

(when nonmoving party bears burden of proof at trial, moving party is entitled to summary judgment if nonmovant fails to make showing on essential element of its claim); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

**14.** *Spencer v. Hendersen–Webb, Inc.*, 81 F.Supp.2d 582, 591 (D.Md.1999), held that a charge for attorney fees was unlawful when, in fact, no attorneys worked on the matter. *Tipping–Lipshie v. Riddle*, No. CV 99–4646, 2000 U.S. Dist. LEXIS 2477, at *2 (E.D.N.Y. Mar. 1, 2000), which in involved a similar $98 charge by the same defendant, did not involve any issue as to the legality of the charge. The fact that the letter involved in that case appears to have described the charge as a "statutory fee" is neither here nor there. In this case, the evidence establishes that $98 was a reasonable charge, and it was expressly permitted by the agreement between plaintiff and defendant's client. The other cases plaintiff

cites all involved attempts to collect fees proscribed or not permitted by law, *see, e.g., West v. Costen*, 558 F.Supp. 564, 582 (W.D.Va. 1983); *Strange v. Wexler*, 796 F.Supp. 1117, 1118 & n. 1 (N.D.Ill.1992), or stand for the unremarkable and, in this case, irrelevant proposition that, under New York law, attorney fees may not be awarded for prospective services, *see, e.g., Naugatuck Savings Bank v. Gross*, 214 A.D.2d 549, 550, 625 N.Y.S.2d 572, 573–74 (2d Dept.1995); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartel*, 782 F.Supp. 22, 24–25 (S.D.N.Y.1992).

**15.** Pl. Mem. 5–6.

**16.** 164 F.3d 81 (2d Cir.1998).

**17.** *Id.* at 85 (internal quotation marks omitted).

**18.** *Id.* (internal quotation marks omitted).

**19.** Cpt. Ex. A.

**20.** *Id.*

very next sentence read: "No decision has been made to file a lawsuit," and it went on to add that *"[i]f* legal action is taken," it would be handled by an attorney licensed in the debtor's state.[21] Thus, whatever mistaken impression or confusion might have been created by the first two sentences, had they stood alone, unequivocally was removed or clarified by the third and fourth sentences. The letter as a whole left no doubt that litigation was merely an option, that no decision had been made as to whether to litigate, but that the debtor could avoid the *risk* of a lawsuit either by paying or arranging to pay.

Moreover, the letter's references to litigation did not overshadow or contradict its debt validation language. The letter clearly explained, in language similar to that suggested by the *Savino* panel, that the defendant would be obliged to cease all collection efforts, whether through litigation or other means, if the debtor exercised his right to seek validation of the debt.[22] In other words, this letter, unlike that in *Savino*, made it entirely clear that the right to seek validation of the debt would trump the commencement or contin-uation of a lawsuit until such time as the debt collector complied with the statute.[23] Far from overshadowing the notice of the debtor's validation right, this letter made it quite clear.[24] Thus, because the reference to litigation did not overshadow or contradict the mandatory validation notice, the "least sophisticated consumer" would not have been uncertain as to her rights.[25]

Plaintiff's memorandum, generously interpreted, could be read to contend that the letter suffers from an additional deficiency under the FDCPA—that it misleadingly suggested that litigation was imminent when "there is no reason to believe that it was ever contemplated by the creditor to commence litigation within thirty days of when the consumer received this letter."[26] This argument suffers from a number of deficiencies.

First, plaintiff, who bears the burden on this point, has failed to come forward with any evidence to suggest that, even if the letter reasonably could be interpreted to threaten imminent suit, Riddle had no intention of commencing litigation. Furthermore, plaintiff's contention is belied by the letter, which stated explicitly that no

21. *Id.* (emphasis added).

22. Plaintiff's suggestion that the letter implies that writing to Riddle "will not stave off litigation" because Riddle could not control the actions of a New York lawyer who would bring such a suit strains credibility. Pl. Mem. 6. The letter's clear message is that requesting validation of the debt would stay collection efforts "through litigation or otherwise." Cpt. Ex. A.

23. The letter at issue in *Savino* contained a demand for "immediate payment" in the test of the letter, bore a legend below the body of the letter stating "PLEASE SEE IMPORTANT NOTICE ON BACK," and set forth the required validation notice on the reverse side. *Savino,* 164 F.3d at 84. The Court of Appeals held that the demand for immediate payment, standing alone, did not violate the Act. *Id.* at 85–86. It went on to hold, however, that the FDCPA was violated because the body of the letter, which contained the payment demand, failed to explain that the demand "did not override the consumer's rights under Section 1962g to seek validation of the debt." *Id.* at 86. The court took pains to explain that the debt collector could have avoided a FDCPA violation by including an appropriate explanation that the payment demand did not negate the validation right and that, if the debtor disputed the debt, the debt collector would be obliged to cease collection efforts until it provided the requisite information. *Id.* at 86.

24. *See also, e.g., Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir.1997).

25. *See Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir.1996).

26. Pl. Mem. 6.

decision to sue had been made. Finally, the undisputed evidence shows that Riddle has filed, or caused to be filed on behalf of its clients, approximately 8,000 to 10,000 lawsuits where the average balance owed was between $25 and $50.[27] Thus, this argument is without merit.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment dismissing the complaint is granted. Plaintiff's motion for summary judgment is denied. Plaintiff's motion for class certification is denied as moot.

SO ORDERED.