# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3108

LOIS ANN SINGER,

*Plaintiff-Appellant,*

v.

PIERCE & ASSOCIATES, P.C.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 6323—**Blanche M. Manning**, *Judge.*

———————

ARGUED MAY 21, 2004—DECIDED SEPTEMBER 8, 2004

———————

Before BAUER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* In November of 2000, Lois Ann Singer obtained a $100,750 mortgage loan that, among other things, authorized the collection of "reasonable attorneys' fees" should she default. After Singer fell behind on her mortgage payments, her bank, Wells Fargo Bank Minnesota, hired Pierce & Associates, P.C., to foreclose on the property. Once Saxon Mortgage Services, Inc.,[1] the bank's ser-

———————

[1] Saxon was formerly known as Meritech Mortgage Services, Inc. According to Singer's complaint, Wells Fargo "authorized Saxon to accept all payments on [Singer's] loan and to deal with [Singer] on

(continued...)

vicing agent, accelerated the loan, Pierce filed the foreclo-
sure action on September 28, 2001, in the Circuit Court of
Cook County, Illinois. The Illinois court set the foreclosure
sale for May 10, 2002 and awarded $1100 in attorneys' fees
and $908 in costs to the bank.

Before the scheduled foreclosure sale, however, Singer
arranged to sell the property. She notified Saxon that she
wanted to pay off the loan. Saxon, in response to Pierce's
request to satisfy the loan and avoid a foreclosure sale, sent
a loan payoff letter dated April 5 to Singer setting forth, in
pertinent part, the following:

| | |
|---|---:|
| Principal | 100,599.78 |
| Interest Thru 04/30/2002 | 11,737.10 |
| Escrow | 2,485.13 |
| Late Charge | 711.62 |
| Attorney Fee | 993.00 |
| Marketing Cost | 205.00 |
| Pir Inspection | 39.75 |
| Attorney Fee | 1,581.00 |
| Late Charge | 54.74 |
| Prepayment Penalty | 5,128.67 |
| Total Funds Due for Pay Off: | 123,535.79 |

(R. 38, Ex. C.) Full payment of the $123,535.79 was a
precondition to releasing the Wells Fargo mortgage so the
sale to the third party could be finalized. In early May,
Singer closed the deal with the buyer and paid off the bal-

---

[1] (...continued)
behalf of [Wells Fargo] as if Saxon were the owner [of the debt]. All
actions of Saxon described [in the complaint] were taken within
the scope of Saxon's authority as servicing agent." (Amend. Comp.
¶ 10.)

ance requested in the loan payoff letter. On May 8, the Illinois court granted Wells Fargo's motion to dismiss the foreclosure action and vacate all previous orders (including the order setting attorneys' fees and costs).

Singer, along with two other plaintiffs, sued several defendants, including Pierce, Wells Fargo, and Saxon, alleging that the defendants engaged in illegal lending and collection practices. The only issue before us on appeal is whether Singer stated a Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), claim against Pierce for its attempts to collect $2574 in attorneys' fees when the Illinois court had designated only $1100 in attorneys' fees in a vacated interlocutory order. The district court dismissed this count, finding that the mortgage contract entitled Wells Fargo to collect reasonable attorneys' fees against Singer, without regard to the vacated Illinois court order. For the reasons stated herein, we affirm.

## I. Analysis

We review the district court's decision to dismiss de novo, "accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

Before we assess the propriety of the district court's ruling, a couple of troubling issues should be noted. Initially, although not raised by Pierce in this appeal, it is questionable whether the loan payoff letter of April 5 constitutes a demand for collection of a debt contemplated by the FDCPA. A foreclosure action had already been filed, and the letter from Saxon itemizing the payoff was sent to Singer at her request so she could close on the sale of her property. Further, Singer, "the unsophisticated consumer," was represented by counsel in the real estate transaction. Nonetheless, the issue of whether actions related to the real

estate closing implicate the FDCPA is waived and we treat the April 5 letter as a debt collection effort covered by the FDCPA.

Also, given that *Saxon* unquestionably sent the letter to Singer that itemized the loan charges, including the $2574 in attorneys' fees, we are somewhat mystified as to why *Pierce* is alleged to have violated the FDCPA in that regard. Implicitly, it seems Singer is suggesting that Pierce, by billing Saxon or Wells Fargo for $2574 or by accepting payment by Saxon in that amount, has committed an FDCPA violation against Singer because those costs were passed on to her. But even if the court order limited the recovery of attorneys' fees from Singer to $1100, the court order did not necessarily have anything to say about the ultimate compensation paid to Pierce by Wells Fargo. Saxon directly notified Singer of the amount of the debt, without using a third-party debt collector like Pierce. Although Saxon could be a debt collector (for Wells Fargo) under the FDCPA (a question we have no reason to consider as Singer makes this claim against Pierce only), this makes no difference in deciding whether Pierce did anything illegal under the FDCPA.

At least arguably, Pierce took no action to collect the $2574 attorneys' fees debt. Instead, Pierce filed the foreclosure action, sought and obtained an interlocutory award of attorneys' fees and costs, and dismissed the action and had prior orders vacated after the loan was paid in full.

Pierce, however, did not argue to the district court or this court that Saxon's payoff letter should not be imputed to it under the FDCPA. Again, the issue is waived (for the purposes of this appeal), and we will proceed on the assumption that Pierce can be held responsible for the Saxon communication if it violated the FDCPA.

The Illinois state court's September 2001 award of attorneys' fees and costs set the amount of reasonable attorneys' fees at $1100. Thus, according to Singer, it must be an

FDCPA violation to state in the loan payoff letter that the amount owed in attorneys' fees was $2574, because it misstates the amount of the debt under § 1692g(a), misleads an unsophisticated consumer under § 1692e, and is an unfair or unconscionable means of collection under § 1692f.

Under the circumstances of this case, however, the court order did not provide a definitive answer for the appropriate amount of attorneys' fees to charge Singer. Had the foreclosure proceedings continued, Wells Fargo could only have collected attorneys' fees authorized by the court. But Singer avoided the foreclosure proceedings by selling the property on her own and paying Saxon at closing the amount it had calculated. After Singer sold her property and paid Saxon in full, at the request of Wells Fargo the Illinois state court dismissed the foreclosure proceedings against Singer and vacated all prior orders. Thus, Pierce properly received its attorneys' fees pursuant to the mortgage agreement signed by Singer. Wells Fargo (and thus Pierce) was not bound by or limited to the court's vacated attorneys' fees award in a dismissed case.

As the district court noted in its order dismissing this case, "That the Cook County judge entered an order, now vacated, awarding attorneys' fees in an amount less than that demanded and collected by Defendants, while perhaps probative of the *reasonableness* of the fees collected, does not add to Singer's argument that a court order is a prerequisite to the enforcement of a valid contract provision allowing for attorneys' fees."

In *Fields v. Wilber Law Firm*, 03-4108, (7th Cir. Sept. 2, 2004), we held that a debt collector may include attorney fees and collection costs in the dunning letter when the underlying contractual relationship between the debtor and creditor provided for the recovery of such fees and costs. Thus, no violation of § 1692g(a) occurred here when attorneys' fees were determined, requested, and obtained

without receiving court approval for the amount charged. And unlike the debt collector in *Fields*, Saxon segregated the attorneys' fees from the underlying debt in an itemized list of expenses, thus avoiding a § 1692e or § 1692f violation. *See id.* at 5-6 (holding that it is misleading under the FDCPA to lump attorneys' fees in with the principal debt as part of an account balance in a dunning letter); *see also Shapiro v. Riddle & Assocs., P.C.*, 240 F. Supp. 2d 287, 289-90 (S.D.N.Y.), *aff'd*, 351 F.3d 63 (2d Cir. 2003) (holding that it was not an FDCPA violation to include an attorneys' fees charge in a debt collection letter when that fee was authorized by an agreement between the creditor and debtor).


## II. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision to dismiss Singer's FDCPA claim.


A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of Appeals for the Seventh Circuit*