[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10038
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cv-62338-BB


KEVIN PRESCOTT,

Plaintiff-Appellant,

versus

SETERUS, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 3, 2015)

Before ED CARNES, Chief Judge, WILSON, and JULIE CARNES, Circuit
Judges.

PER CURIAM:

Kevin Prescott appeals the district court's grant of summary judgment to Seterus, Inc. on his claims alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and the Florida Consumer Collections Practice Act (FCCPA), Fla. Stat. § 559.55 et seq.  We reverse and remand for further proceedings consistent with this opinion.

I.

In April 2004 Prescott purchased real property in Pembroke Pines, Florida. To fund the purchase, he obtained a $160,000 loan from Bank of America secured by a mortgage on the property.[1]  A few sections of the security agreement that Prescott signed are relevant to his appeal.

Section 9 provides, in pertinent part, that

> [i]f [] Borrower fails to perform the covenants and agreements contained in this Security Instrument, … then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including … (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding … Any amounts disbursed by Lender under this [section] shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Section 14 provides that

---

[1] Prescott actually obtained that mortgage jointly with his wife Debby Ann.  As far as we can tell, however, Prescott has pursued this lawsuit on his own, so we refer to him individually.

2

Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Prescott defaulted on his mortgage on August 1, 2012.  Seterus began servicing the mortgage on October 1, 2012.[2]  Because Prescott was in default, Seterus prepared to initiate foreclosure proceedings against him.  Seterus retained the law firm of Kahane and Associates to provide legal services associated with the foreclosure.

Prescott asked Seterus to reinstate his mortgage in August 2013.  Under Section 19 of the security instrument, he was entitled to reinstatement if he satisfied "certain conditions," including

(a) pay[ing] Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cur[ing] any default of any other covenants or agreements; (c) pay[ing] all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) tak[ing] such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to

_____

[2] Bank of America assigned Prescott's mortgage to the Federal National Mortgage Association on October 26, 2012.  Seterus remained the loan servicer after the assignment.

3

pay the sums secured by this Security Instrument, shall continue unchanged…

On September 4, 2013, Seterus sent Prescott a letter showing the total amount he needed to pay for his loan to be reinstated.  The letter stated that the reinstatement balance — $15,569.64 — was "good through 9/27/2013."  That balance included property inspection and legal fees, among other charges.  Specifically, it included $165 in incurred property inspection fees and $15 in "estimated" property inspection fees.  It also included $1,125 in incurred attorney's fees and $3,175 in "estimated" attorney's fees.[3]  The estimated fees were marked "estimated" and were listed in a separate section of the letter labeled "Estimated Charges Through 9/27/2013."  The letter also included the following language: "This communication is from a debt collector as we sometimes act as a debt collector.  We are attempting to collect a debt and information obtained will be used for that purpose."

Prescott paid the full reinstatement balance on September 26, 2013, and Seterus reinstated his mortgage loan.  On November 14, 2013, Seterus refunded Prescott the $3,175 in estimated legal fees because those fees were not incurred before Seterus reinstated the mortgage.  Seterus did not refund Prescott the

_____

[3] Seterus obtained this estimate from Kahane and Associates.  Kahane and Associates billed Seterus for each "step" in the foreclosure process.  The firm charged $1,125 for the first step and would have charged $3,175 for the second.

4

estimated property inspection fees, however, because those fees were incurred before reinstatement.[4]

About a week after his loan was reinstated, Prescott filed a lawsuit against Seterus in Florida state court, asserting that the inclusion of estimated attorney's fees in his reinstatement balance violated §§ 1692e(2) and 1692f(1) of the FDCPA and § 559.72(9) of the FCCPA.  Seterus removed the case to federal court, and the parties filed motions for summary judgment.  The district court granted summary judgment for Seterus on all of Prescott's claims.  He appealed.  We review the district court's judgment de novo.  See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189 (11th Cir. 2010).

## II.

Prescott first contends that Seterus violated §§ 1692e(2) and 1692f(1) of the FDCPA by including estimated attorney's fees in his reinstatement balance.  We agree.

The FDCPA "regulates what debt collectors can do in collecting debts." Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015). Because Congress enacted the statute primarily to protect consumers, we evaluate the circumstances giving rise to an alleged FDCPA violation from the perspective

---

[4] Because Prescott does not address the property inspection fees in his briefs to this Court, he has abandoned any challenge to them.  See Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994).

5

of the least sophisticated consumer.  See Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258–59 (11th Cir. 2014); Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985).  The least sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  LeBlanc, 601 F.3d at 1194; see also Jeter 760 F.3d at 1175 n.6 (the least sophisticated consumer is "on the low side of reasonable capacity").  That standard protects "naïve consumers" and "prevents liability for bizarre or idiosyncratic interpretations of collections notices by preserving a quotient of reasonableness."  LeBlanc, 601 F.3d at 1194.

Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1). Prescott contends that he was not expressly obligated under the security agreement to pay for estimated attorney's fees.  We agree.

The security agreement does obligate Prescott to pay for attorney's fees and other expenses that Seterus actually incurred as a result of his default, but nothing in it explicitly states that Prescott must pay estimated fees for future legal services. The question is whether the least sophisticated consumer would have nonetheless

6

understood the agreement to obligate Prescott to pay such fees.  See LeBlanc, 601 F.3d at 1200–01.  The answer is no.

In order to reinstate his loan, Section 19 of the security agreement required that Prescott pay all past-due amounts, including the fees and costs incurred as a result of his default; completely cure any defaults; and "take such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under the Security Instrument and [Prescott's] obligation to pay the sums secured by [the] Security Instrument shall continue unchanged."  According to Seterus and the district court, that quoted language allowed Seterus to charge Prescott estimated attorney's fees to cover any legal expenses that it might have incurred between September 4 (when it mailed the reinstatement letter) and September 27 (when the reinstatement quote expired).

The least sophisticated consumer would not have understood the language of Section 19 of the agreement to reach so broadly.  The remainder of the agreement obligated the borrower to pay only those fees "incurred" or "disbursed" by the lender for "services performed in connection with [his] default."  That past-tense language does not encompass forward-looking estimated fees.  See Kaymark v. Bank of Am., 783 F.3d 168, 175 (3d Cir. 2015) (finding that the "most natural reading" of similar language, when viewed "through the lens of the least-sophisticated consumer," was "that [the lender] was not authorized to collect fees

7

for not-yet-performed legal services and expenses"); see also Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606, 609–10 (11th Cir. 2014) (holding that a debt collector violated § 1692f by charging the debtor a 33-and-1/3% "collection fee" where the agreement at issue only demanded that he pay "all costs of collection"). Because the least sophisticated consumer would not have understood that the security agreement "expressly authorized" Seterus to charge estimated fees for legal services not yet rendered, we reverse the district court's grant of summary judgment on Prescott's § 1692f(1) claim.

Prescott also contends that the estimated attorney's fees charged by Seterus violated § 1692e of the FDCPA.  We agree.  That section provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  15 U.S.C. § 1692e(2).

In granting summary judgment to Seterus on that claim, the district court focused on the fact that Seterus had not misrepresented the nature of the estimated fees in the reinstatement letter.  It is true that Seterus clearly separated the estimated fees from those already incurred and conspicuously marked those charges as "estimated."  Even the least sophisticated consumer would have

8

understood that the estimated fees were just that — estimates.  See Elyazidi v.

Suntrust Bank, 780 F.3d 227, 235 (4th Cir. 2015).  So it is clear that Seterus did

not falsely misrepresent the character of those fees as prohibited by § 1692e(2)(A).

But § 1692e(2) also prohibits the false representation of any "compensation

which may be lawfully received by any debt collector for the collection of a debt."

15 U.S.C. § 1692e(2)(B).  Seterus violated that provision when it demanded that

Prescott pay estimated attorney's fees before it would reinstate his loan, because

Seterus could not "lawfully receive" those fees under the terms of the security

agreement.[5]  That is true even if Seterus believed it was entitled to those fees.  See

Wise v. Zwicker & Assocs., P.C., 780 F.3d 710, 713 (6th Cir. 2015) (noting that,

under § 1692e, "if a debt collector seeks fees to which it is not entitled, it has

committed a prima facie violation of the Act, even if there was no clear prior

judicial statement that it was not entitled to collect the fees"); Stratton v. Portfolio

Recovery Assocs., LLC, 770 F.3d 443, 449 (6th Cir. 2014) (describing the FDCPA

as "plac[ing] the risk of penalties on the debt collector that engages in activities

which are not entirely lawful, rather than exposing consumers to unlawful debt-

collector behavior without a possibility for relief").  We therefore reverse the

_____

[5] In its brief to this Court, Seterus insists that it included the estimated attorney's fees in the reinstatement balance as a "convenience" to Prescott, so that he could be certain that his payment would satisfy his reinstatement obligations even if Seterus incurred additional fees during the period covered by the reinstatement letter. Had he paid less, Seterus argues, it may have nonetheless reinstated his loan.  But the least sophisticated consumer could not have gleaned that from the reinstatement letter, which clearly said that "[t]he amount required to reinstate [the] loan" was $15,569.64 — an amount including $3,175 in estimated attorney's fees.

district court's grant of summary judgment to Seterus on Prescott's § 1692e(2) claim.

Finally, Prescott contends that the inclusion of estimated legal fees in the reinstatement letter violated the FCCPA, a Florida law under which individuals collecting consumer debts cannot "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). The district court's summary judgment order stated that it "reached the same conclusion" with respect to this claim as it did on Prescott's FDCPA claims. Because Seterus is not entitled to summary judgment on Prescott's FDCPA claims, the summary judgment against him on his FCCPA claim cannot stand either, at least not on the grounds stated.

Although the Florida statute is modeled after the FDCPA, see Fla. Stat. § 559.77(5), the two statutes are not identical. For example, the FCCPA "requires a plaintiff to demonstrate that the debt collector defendant possessed actual knowledge that the threatened means of enforcing the debt was unavailable." LeBlanc, 601 F.3d at 1192 n.12. Some evidence in the record suggests that Seterus may not have known that it could not charge estimated fees under the security agreement. Because the district court based its FCCPA ruling solely on its FDCPA

10

rulings, however, we will allow the district court to consider that issue in the first instance on remand.

III.

Seterus contends that even if we reach the result that we have, it should nonetheless prevail because it is entitled to summary judgment on other grounds. It is true that we "may affirm for any reason supported by the record, even if not relied on by the district court." Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 778 n.3 (11th Cir. 2002). But Seterus is not entitled to summary judgment on either of the alternative grounds it suggests.

Seterus first argues that we should affirm the district court's grant of summary judgment in its favor because Prescott failed to present sufficient evidence that it is a "debt collector," as defined by the FDCPA and the FCCPA. See 15 U.S.C. § 1692a(6) (defining a debt collector as one whose "principal purpose . . . is the collection of debts" or one "who regularly collects or attempts to collect . . . debts owed . . . to another"); Fla. Stat. § 559.55(7) (same). The district court did not directly address this issue, noting only that the parties had stipulated that Seterus "acquired [Prescott's] mortgage after it was in default."

Although Seterus denied being a debt collector in its answer to Prescott's complaint, it did not move for summary judgment on that ground. We decline in this instance to affirm the district court's grant of summary judgment on a ground

11

that Seterus failed to raise before that court.  See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

Seterus also argues that its actions resulted from "bona fide error," relieving it of liability under the FDCPA and the FCCPA.  The FDCPA "typically subjects debt collectors to liability even when violations are not knowing or intentional," but it "affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense."  Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270–71 (11th Cir. 2011).  Section 1692k(c) insulates debt collectors from liability "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c); see Fla. Stat. § 559.77(3) (same).  The Supreme Court has held that the FDCPA's bona fide error defense does not encompass "mistakes of law" or "misinterpretations of the requirements of the Act."  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 581, 587, 130 S. Ct. 1605, 1611, 1615 (2010).  Instead, the bona fide error defense protects against liability for "errors like clerical or factual mistakes."  Id. at 587, 130 S. Ct. at 1614.

12

Seterus violated the FDCPA and FCCPA by charging Prescott estimated attorney's fees that he had not agreed to pay in the security agreement.  That violation may have resulted from a "mistaken interpretation of the legal requirements of the FDCPA" or from a mistaken interpretation of the agreement itself.  See id. at 576, 130 S. Ct. at 1608.  Either way, the violation did not result from a factual or clerical error.  Because under Jerman the bona fide error defense does not excuse Seterus' faulty legal reasoning, we cannot affirm the district court's grant of summary judgment to Seterus on that basis.

The district court's judgment is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.[6]

---

[6] Seterus' motion to strike certain portions of Prescott's reply brief is **DENIED** as moot.

13