RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MELVIN SPARKS; ANGELA SPARKS,

*Plaintiffs-Appellants*,

*v.*

EQUITYEXPERTS.ORG, LLC,

*Defendant-Appellee*.

No. 18-2378

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-11330—Robert H. Cleland, District Judge.

Argued: August 7, 2019

Decided and Filed: August 21, 2019[*]

Before: ROGERS, BUSH, and LARSEN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Edward A. Mahl, MICHIGAN CONSUMER CREDIT LAWYERS, Southfield, Michigan, for Appellants. Katrina M. DeMarte, MAGDICH LAW, Livonia, Michigan, for Appellee. **ON BRIEF:** Edward A. Mahl, MICHIGAN CONSUMER CREDIT LAWYERS, Southfield, Michigan, for Appellants. Katrina M. DeMarte, Jennifer R. Anstett, MAGDICH LAW, Livonia, Michigan, for Appellee.

---

[*]This decision was originally filed as an unpublished opinion on August 21, 2019. The court has now designated the opinion for publication.

---

**OPINION**

---

ROGERS, Circuit Judge.  Melvin and Angela Sparks own property in a neighborhood overseen by a homeowners' association.  When they fell behind on their assessments, the Association engaged EquityExperts.org, LLC ("Equity Experts")—a debt-collection company—to collect that debt on the Association's behalf.  During its collection efforts, Equity Experts also sought to collect from the Sparkses the fees it charges the Association for its collection services.  The Sparkses contend that Equity Experts' attempts to collect those fees violated the Fair Debt Collection Practices Act ("FDCPA").  That Act prohibits debt collectors from, among other things, attempting to collect debts not "expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  But the agreement here expressly authorizes the Association to collect its "costs"—which, in this case, are Equity Experts' fees.

The Sparkses own property in the Four Mile Run neighborhood in Virginia.  The neighborhood is a deed-restricted community managed by the Four Mile Run Homeowner's Association.[1]  By accepting title to their property, the Sparkses agreed—per the Association's recorded Declaration of Covenants—to pay assessments to the Association for the management and upkeep of neighborhood common areas.  Article IV of the Declaration also sets out the consequences for failing to timely pay those assessments:

> The annual and special assessments, together with interest, costs and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made.  Each such assessment, together, with interest, costs, and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such property at the time the assessment fee becomes due.

In 2016, the Sparkses fell behind on their payments.  As of December 12, 2016, they owed $220 in past-due assessments and fees.  Around that time, the Association sent its account

---

[1]The Association's by-laws refer to the Association as a "homeowner's association," whereas the more accepted spelling is "homeowners' association."  Except where quoting the record, this opinion uses the latter formulation.

with the Sparkses to Equity Experts for collection. Earlier that year, the Association and Equity Experts had entered into a collection agreement, through which the Association engaged Equity Experts as its exclusive collection agent. The 2016 Collection Agreement sets out a schedule of fees for Equity Experts' collection services and authorizes Equity Experts to collect those fees directly from delinquent homeowners.

Once the Association sent the Sparkses' account for collection, Equity Experts began its efforts to collect. On December 13, 2016, Equity Experts sent the Sparkses a dunning letter, stating that "[t]he Association reports that you have not paid your share of the Association's assessments and your total unpaid balance is $490." The letter explained that the total balance "may also include special assessments, interests, fees and/or fines charged by the Association, and any attorney's fees and collection costs incurred by the Association to collect the debt." In fact, that unpaid balance included a $270 fee for Equity Experts' FDCPA Compliance Assurance Package/Pre-Lien Review Process. Over the next month or so, Angela Sparks claims she called Equity Experts several times to ask about the debt—but without any answer or return call. The collection process continued over the next several months, with additional letters and a mounting balance, eventually totaling more than $1000.

In April 2017, the Sparkses sued Equity Experts for violating the Fair Debt Collection Practices Act in the course of its collection efforts. Eventually the Sparkses moved for summary judgment, arguing that Equity Experts had violated the FDCPA by (1) collecting its fees directly from the Sparkses without authorization and (2) attempting to collect from the Sparkses after agreeing to a settlement. The case went to trial on the second issue, and a jury returned a verdict in favor of Equity Experts. The Sparkses do not challenge that verdict, but they do challenge the district court's grant of summary judgment in favor of Equity Experts on the first issue: whether Equity Experts was expressly authorized to collect its fees from the Sparkses. We review a district court's ruling on a summary judgment motion de novo. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To that end, the Act bars debt collectors from using "any false, deceptive, or misleading representation or means," § 1692e, or "unfair or unconscionable

means," § 1692f, to collect a debt. Both parties agree that Equity Experts is a "debt collector" and that the unpaid Association assessments are "debt" under the Act. They differ, of course, as to whether Equity Experts violated the Act.

The Sparkses contend that Equity Experts flouted each of those sections by falsely representing the "character, amount, or legal status" of their Association debt, § 1692e(2)(A), and by collecting an amount that was not "expressly authorized by the agreement creating the debt or permitted by law," § 1692f(1). Both supposed violations center on Equity Experts' attempts to collect its collection fees from the Sparkses. This appeal turns on whether the agreement creating the debt—the Declaration—expressly authorizes the collection of those fees.

The Declaration expressly authorizes the collection of the Association's costs, which are comprised of Equity Experts' fees. By accepting a deed to property within the Four Mile Run neighborhood, the Sparkses agreed to pay annual and special assessments or charges. The Declaration states that, "Each such assessment, together, with interest, costs, and reasonable attorney's fees" shall "be a charge on the land and shall be a continuing lien upon the property" and "shall also be the personal obligation" of the property owner. The Sparkses concede they fell behind on their assessments, which amounted to debt that the Association was entitled to collect. In the district court, the Sparkses conceded also that the Association could have charged them its own costs of collection. The Sparkses maintain, however, that the Declaration says nothing about—and thus does not expressly authorize—Equity Experts' collecting its fees directly from them.

That argument misunderstands that Equity Experts' fees *are* the Association's costs of collection. The Association hired Equity Experts to serve as its collection agent. In doing so, the Association agreed to two Collection Agreements (one in 2016 and one in 2017), containing schedules of fees that Equity Experts charged to perform various collection functions on the Association's behalf. The 2016 Collection Agreement (in force when Equity Experts first sought collection from the Sparkses) authorizes Equity Experts to charge those collection costs directly to the delinquent homeowner's account, but the Association remains on the hook for any unpaid fees if collection of an account is stopped. In other words, the fee schedule represents what it costs the Association to retain Equity Experts to collect debt on its behalf. So when Equity

Experts charges those fees to homeowners in the first place, it is collecting those costs to cover what the Association would otherwise owe Equity Experts.

The slightly amended 2017 Collection Agreement between Equity Experts and the Association, which went into effect in April 2017, further supports this conclusion. That agreement confirms that the fee schedule is really a menu of "fees and costs *charged to [the] Association*," which are then added to the debtor's account for purposes of collection. The schedules attached to the 2017 Agreement clarify that

> The Association hereby authorizes Equity Experts to charge the fee(s) listed in Schedule A and Schedule B, below, together with all costs advanced or incurred by EquityExperts.org to Association who may add these amounts to the account of the delinquent Unit and to the Unit Owner(s).

Although the 2017 Collection Agreement went into effect only toward the very end of Equity Experts' attempts to collect from the Sparkses, it confirms that Equity Experts' fees are the Association's collection costs.

In short, the Declaration expressly authorizes the Association to collect its costs. Equity Experts' fees make up the Association's costs. Thus, the Declaration expressly authorizes the collection of Equity Experts' fees.

None of the Sparkses' contrary arguments is persuasive.

First, the Sparkses argue that Equity Experts could not legally collect the costs it claimed were due because those costs had not yet been incurred by the Association.[2] As an initial point, the Declaration says nothing about costs being incurred; it merely provides that the Association's costs become the personal obligation of the delinquent homeowner. That said, the use of the term "costs" does fairly imply that the homeowner is obligated to pay only something akin to the actual costs of collection—and not any charge, unrelated to actual costs, that the Association

---

[2]The Sparkses argue also that, no matter when the costs were incurred, Equity Experts could not collect those costs until the Association first paid them. As authority, the Sparkses cite the Virginia statute governing foreclosure judgments, which allows for reimbursement of costs. Va. Code § 55-516(F). The Sparkses posit that it "must be the law" that only costs actually paid can be recovered. There appears to be, however, no requirement—in the Declaration or Virginia law—that the Association must pay its incurred costs before seeking payment from the Sparkses.

decides to levy. Otherwise, the authorization of "costs" would be meaningless and open to abuse.

Courts have, along these lines, interpreted contracts that make a debtor responsible for "all costs of collection" not to authorize percentage fees unmoored from the actual costs of collection. *See Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609–10 (11th Cir. 2014). In the same vein, courts have interpreted agreements awarding costs for "services performed" and "expenses incurred" to bar collection of fees for "not-yet-performed" services and expenses. *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175–76 (3d Cir. 2015), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019); *see also Prescott v. Seterus, Inc.*, 635 F. App'x 640, 644 (11th Cir. 2015). In other words, courts have held that "costs" means something like "actual costs" for services performed. But those holdings do not help the Sparkses. The fees they were charged are the Association's actual costs of collection—fees the Association agreed to pay in exchange for the services that Equity Experts actually performed to collect the debt.

The Sparkses contend nonetheless that Equity Experts' fees did not really become the Association's costs until the Association became liable for (or incurred) those costs. According to the Sparkses' reading, the Association only incurred liability under the Collection Agreements if the Association and Equity Experts terminated their relationship. They glean this from the "Termination & Damages" provision of the 2016 Collection Agreement, which provides that a termination would "release the parties with no further obligation to each other with respect to the accounts returned, except Association's obligation to pay [Equity Experts'] unpaid fees as set forth in Schedule A and B." In other words, they read this provision to create the Association's obligation to pay, and to do so only upon termination.

But that blinkered reading ignores that the entire purpose of the agreement and fee schedule is for the Association to engage Equity Experts to perform collection efforts on its behalf in consideration for the agreed-upon fees. The Termination & Damages provision does not create the obligation to pay; it presupposes that such an obligation already exists (referring back to "Association's obligation") and ensures that the Association cannot skirt that obligation by terminating the contract. The better reading is that the Association is contractually obligated

to cover the costs of collection once Equity Experts performs whatever service it is charging for. That the Association does not pay the cost at that time—or not at all if the delinquent homeowners meet their obligation to cover those costs—does not imply that "costs" means something less than the actual cost that the Association is obligated to pay. Both the amount and the Association's contractual obligation to pay are fixed the moment Equity Experts performs a collection service that the Association has agreed, through the Collection Agreements, to pay for. The Sparkses' efforts to treat these costs as a mere "contingent liability" fail as a matter of contract interpretation.

The Sparkses' theory is also unworkable as a practical matter. As they would have it, Equity Experts could, at first, collect only the amount of principal and interest owed by the debtor. Only after those amounts were collected could Equity Experts charge the Association fees for the services it performed. Then, only after the Association actually paid those fees could Equity Experts collect those same fees from the delinquent homeowner—to reimburse the Association for collection fees that had only then (in the Sparkses' view) been incurred. But Equity Experts cannot be expected to collect those collection fees for free, so presumably Equity Experts would have to charge the Association additional fees for that follow-up round of work. To be reimbursed for those follow-up fees, Equity Experts would have to collect from the homeowner in yet another round of collection—for an additional fee, only to start the cycle again.

As the Seventh Circuit has acknowledged, "a debt collector may include . . . collection costs in the dunning letter when the underlying contractual relationship between the debtor and creditor provided for the recovery of such . . . costs." *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 598 (7th Cir. 2004). That is all that Equity Experts did here.

Second, the Sparkses argue that the Declaration's authorization of "costs" is limited to costs typically taxed and awarded by the legal system, like filing and transcript fees. The Sparkses appear to offer this precise interpretation for the first time on appeal, which is generally grounds for forfeiture. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006). Not only that, but their position below—conceding that the Declaration "allows the Association to recover *its* costs," and disputing only that the Association "incur[red] any

collection costs,"—is seemingly in tension with their current argument that "collection costs" do not matter, only legal costs do. Equity Experts, however, does not argue that the argument is forfeited.

But even considering the merits of the Sparkses' argument, we are not persuaded. The Declaration's use of "costs" is best read in its ordinary sense to mean all "costs of collection," and not just taxable "legal costs." When we interpret a contract, "[w]ords used by the parties are to be given their usual, ordinary and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense." *Ames v. Am. Nat'l Bank of Portsmouth*, 176 S.E. 204, 217 (Va. 1934).[3] "'[C]osts' has an everyday meaning synonymous with 'expenses' . . . ." *See Taniguchi v. Kan Pac. Saipan, Ltd*, 566 U.S. 560, 573 (2012); *see also* Oxford English Dictionary Online (2019) (*cost*, n.3: 1. a. "The spending or outlay of money; expenditure; expense; (now only) expenditure or expense incurred to attain a particular goal." b. "An amount that must be or has been paid or spent in order to acquire, produce, maintain, or accomplish something."). Of course, "costs" is also a legal term of art referring to a narrower set of taxable costs associated with the legal system, such as clerk and filing fees. *See, e.g.*, *Taniguchi*, 566 U.S. at 573. So it is possible for a contract to use "costs" in this narrower way. But context suggests otherwise here.

The relevant provision of the Declaration covers the homeowner's requirement to pay assessments and the consequences for failure to do so. Unpaid assessments, together with "costs," become a personal obligation—that is, a debt—of the homeowner. That necessarily implies that the Association, being owed a debt, has the right to collect that debt. So the provision is also about collection, which may take place in or out of court (or both). Because collection often occurs outside of litigation, it makes little sense to read the Declaration to silently limit "costs" to "legal costs" associated only with litigation. That reading might, more often than not, force the Association to spend more on collection efforts than the sums to be collected—or incentivize costly litigation over more flexible out-of-court recovery options. There is no indication that the parties intended such unintuitive consequences. The parties easily

---

[3]Because the Declaration is recorded in Virginia, where the property is located, it is interpreted according to Virginia law.

could have expressed that intent by modifying "costs" with any of a number of worthy limiters: "legal," "taxable," "court," or "litigation," to name a few. They did not.

In support of the narrower, legal definition, the Sparkses look to several other uses of the term "costs" in various state and federal statutes. But it is not disputed that "costs" can be used in that technical way; it does not follow that it has that technical meaning here.

Our affirmance does not suggest that Equity Experts' collection practices otherwise comply with the FDCPA. At least at first blush, it is troubling that a debt of $220 grew, because of Equity Experts' fees, to more than $1000 in a few months of collection efforts. The Sparkses have not, however, argued that Equity Experts' fees were unreasonably high. Nor have they provided substantial evidence of an understanding between Equity Experts and the Association that the Association would never actually have to pay the collection fees.[4] Had they, this might be a different case.

Instead, the Sparkses raise a smorgasbord of largely ill-fitting claims in addition to those dealt with above. Among them, the Sparkses argue that the Collection Agreements violate the statute of frauds and principles of the privity of contract, the Association impermissibly delegated its assessment power to Equity Experts, the Association forfeited its fiduciary and accounting duties, and Equity Experts engaged in the unauthorized practice of law. None of these claims was raised in the district court. These claims are forfeited. *See, e.g.*, *Armstrong*, 432 F.3d at 700. The fact that we review de novo a district court's grant of summary judgment regarding issues that were raised below does not mean that we review claims that were not raised below.

As explained above, the claims that the Sparkses did preserve below are without merit. For those reasons, the judgment of the district court is affirmed.

---

[4]The Sparkses do cite snippets from Equity Experts' website, which market "[z]ero out-of-pocket cost," among other attributes. But those marketing claims cannot vitiate the Association's contractual payment obligations. Besides, collecting costs from the debtor before (eventually, if necessary) seeking payment from the Association is consistent with the puffery about "[z]ero out-of-pocket cost."