[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10008

Non-Argument Calendar

_____

LARRY V. BISHINS,

Plaintiff-Appellant,

*versus*

UNITED STATES SECRETARY OF HEALTH AND

HUMAN SERVICES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00614-DCI

_____

Before LUCK, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Larry Bishins, proceeding *pro se*, appeals the district court's dismissal of his action against the Secretary of the United States Department of Health and Human Services ("HHS"), concerning the denial of Bishins's Medicare coverage for his Continuous Positive Airway Pressure ("CPAP") machine equipment and supplies and concerning HHS's response to his related request under the Freedom of Information Act ("FOIA").[1] After careful review, we affirm the dismissal of Bishins's actions without leave to amend for the reasons stated below.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

The facts on appeal are as follows:[2]

In 2014, Bishins's doctor diagnosed him with obstructive sleep apnea, ordered a sleep study, and recommended a CPAP machine. Bishins subsequently obtained a CPAP machine from a medical supplies vendor, and Medicare paid for this machine and for Bishins's CPAP supplies and equipment for the next year.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to a magistrate judge conducting all proceedings.

[2] "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1294 (11th Cir. 2023).

In August 2015, however, the Center for Medicare and Medicaid Services ("CMS"), which administers the Medicare program, advised Bishins's medical supplies vendor that it would no longer pay his CPAP-related claims. Medicare had audited Bishins's file and determined that two documents were missing and one could not be read, so the requirements to continue coverage were not met, and Bishins's CPAP-related claims were placed in "denied status." Bishins claims that, strangely, neither CMS nor Bishins's medical supplies vendor notified him of this unfavorable decision, and the medical supplies vendor continued to provide Bishins with CPAP supplies for the next several years with no request for payment from him.

In 2019, after a second sleep study confirmed Bishins's obstructive sleep apnea, Bishins's doctor sent a new prescription for CPAP supplies to a new medical supplies vendor. Sometime thereafter, CMS refused to pay for Bishins's CPAP supplies, and Bishins was forced to pay out of pocket. In December 2020, Bishins received an e-mail from an HHS health insurance specialist, Desmica Head, notifying him that his CPAP machine was in "denied status" and that any subsequent claims for a CPAP machine or supplies would likely be denied. She informed Bishins that an appeal could be filed with supporting documentation to show that he met requirements. Bishins did not have any notice prior to the e-mail that he had been denied Medicare coverage.

Because Bishins's health had deteriorated further, his doctor determined that he needed a CPAP machine that produced higher

air pressure and could transmit information remotely. However, Bishins's new medical supplies vendor would not supply him with the machine because he was in "denied status," so Bishins purchased it himself.

Between January and June 2021, Bishins sent letters to Head, Maximus Federal Services, Inc. (the qualified independent contractor administering his Medicare claims), and CMS attempting to appeal the denial.

In February 2021, Bishins wrote a letter to Celerian Group Company ("CGS"), Bishins's Medicare administrative contractor, attempting to appeal the denial. CGS responded, stating that his appeal was dismissed because more than 120 days had passed since the "initial determination for the items or services in dispute . . . issued on October 10, 2014." CGS noted that Bishins's medical supplies vendor was responsible for submitting an appeal and did not do so, adding that it did not find that Bishins had good cause for late filing but that he could request that CMS vacate the dismissal and excuse his late filing within 6 months or that Maximus complete a reconsideration of CGS's redetermination within 60 days of receiving CGS's dismissal.

In June 2022, Bishins wrote grievance letters to the Secretary, Maximus, and CMS demanding a hearing as to the denial of Medicare benefits. In each of these letters, he stated that he was unable to appeal from the denial of benefits because no CPAP supplier would provide him with CPAP supplies so that he could lodge

a claim and requested that HHS grant a hearing and remove him from "denied status."

In August 2022, CMS health insurance specialist Brett Chambers e-mailed Bishins, explaining that Bishins was in "denied status" because an order was not obtained before delivery of the new CPAP machine, his records were illegible, and his doctor did not assess him for obstructive sleep apnea in a face-to-face clinical evaluation. Chambers stated that Bishins could contest the determination by filling another claim for coverage, having the claim denied, and administratively appealing. Bishins responded with a letter contesting all three reasons.

That same month, Bishins received a Notice of Decision from an administrative law judge (ALJ) affirming the dismissal of his request for reconsideration by Maximus. The ALJ explained that Maximus dismissed his request because there was no redetermination by CGS pursuant to 42 U.S.C. § 405.972(b)(6) that expressly discussed the May 28, 2020, date of service at issue and Bishins's reconsideration request to Maximus did not contain sufficient information. Bishins requested that the appeal be reopened but never received a response.

On August 15, 2022, Bishins filed a FOIA request with CMS, in which he asked for copies of all records related to the audit of his administrative file; records of his requests for CPAP supplies between January 1, 2014, and August 14, 2022, and associated denials and appeals; copies of his letters to all Medicare offices and contractors; and copies of all records in his file that did not fall into the

listed categories.   On September 16, 2022, CMS acknowledged Bishins's FOIA request and noted it may take longer than 20 days to fulfill his request.   On September 27, 2022, CMS released all responsive records to Bishins.

On April 3, 2023, Bishins filed a *pro se* complaint against the HHS Secretary in his official capacity, alleging that Medicare violated his rights under Title VIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, by declining to pay for his CPAP machine and supplies.   The Secretary filed a motion to dismiss Bishins's complaint for lack of jurisdiction and failure to state a claim.   Bishins sought leave to amend his complaint to add claims for violations of his due process and equal protection rights.   The district court dismissed all of Bishins's claims without prejudice.   However, in recognition of Bishins's *pro se* status, the district court granted him leave to amend his complaint and granted his motion requesting the addition of his constitutional claims.

On September 20, 2023, Bishins filed a *pro se* second amended complaint.  He requested that the district court enjoin the Secretary from refusing coverage for the cost of his medical devices and from denying him a hearing, and he requested that the court enter writs of mandamus ordering the Secretary to give him a hearing and cease violating his statutory and regulatory rights.  He requested relief under FOIA and a declaratory judgment of his entitlement to Medicare coverage for his CPAP claims pursuant to 28 U.S.C. §§ 2201 and 2202, as well as relief under 42 U.S.C. § 1983 and *Bivens* from the Secretary's alleged violations of his rights to equal

protection and due process.  He alleged that district court jurisdiction was proper pursuant to 28 U.S.C. §§ 1331, 1346, and 1361 and 5 U.S.C. §§ 702 and 703.

The district court granted the Secretary's motion to dismiss Bishins's second amended complaint and closed the case.  First, the court determined that Bishins's claims for injunctive and mandamus relief failed for lack of subject-matter jurisdiction.  The court ruled that 42 U.S.C. § 405(g) and (h), made applicable to the Medicare Act, channeled most, if not all, claims through a special Medicare review system and limited federal court jurisdiction to reviewing final agency decisions.  The plain language of § 405(h) made clear that Bishins could not rely on §§ 1331 or 1346 as a basis for jurisdiction.  Second, the court determined that Bishins's FOIA claim failed for lack of actual exhaustion of administrative remedies.  Third, the court determined that Bishins's request for declaratory relief is jurisdictionally barred by 42 U.S.C. § 405(g) and (h) and is not independently authorized by the Declaratory Judgment Act or the Administrative Procedure Act ("APA").  Fourth, the court determined that 42 U.S.C. § 1983 and *Bivens* were not proper causes of action for Bishins's constitutional claims.  Bishins was suing a federal official, not a state actor.  Also, a *Bivens* suit may be brought only for money damages against officials that directly participated in the alleged constitutional violation and has not been extended to Social Security program administrators under 42 U.S.C. § 405(g).  Finally, the district court denied Bishins leave to further amend his deficient complaint, observing that Bishins had

already been granted leave to amend and stating that a third amended complaint was unlikely to state a viable claim for relief.

## II.    STANDARD OF REVIEW

"We review *de novo* the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  Similarly, "[t]he decision of the district court as to its subject matter jurisdiction is a question of law that we review *de novo*." *Cash v. Barnhart*, 327 F.3d 1252, 1255 (11th Cir. 2003).  We may affirm on any ground supported by the record.  *PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*, 65 F.4th 556 (11th Cir.), *cert. denied sub nom. PDVSA U.S. Litig. Tr. v. LUKOIL Pan Americas LLC*, 144 S. Ct. 343 (2023).

## III.    DISCUSSION

### A.  Claims for Injunctive, Mandamus, and Declaratory Relief

On appeal, Bishins raised three arguments.  We turn first to Bishins's argument that the district court erred in determining that the district court lacked jurisdiction to consider Bishins's claims for injunctive, mandamus, and declaratory relief.

42 U.S.C. § 405(g) is the exclusive source of federal court jurisdiction over Medicare matters, whether for equitable or

monetary claims. Because Bishins's claims are for equitable relief and regard Medicare matters, they are governed by § 405(g).

Under 42 U.S.C. § 1395ff(b)(1)(A), a Medicare beneficiary is entitled to "judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)." *See Heckler v. Ringer*, 466 U.S. 602, 613-19 (1984). Section 405(g), which was written to cover Social Security rather than Medicare, provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action." This language is incorporated into the Medicare provisions with any reference to the Commissioner of Social Security or the Social Security Administration considered as a reference to the Secretary or the HHS. 42 U.S.C. § 1395ff(b)(1)(A). We have stated that § 405(g) operates as a limited waiver of sovereign immunity that gives federal courts the right to review decisions of the Secretary. *Huie v. Bowen*, 788 F.2d 698, 705 (11th Cir. 1986).

Also incorporated into the Medicare provisions is 42 U.S.C. § 405(h), which also was originally written to cover Social Security. *See* 42 U.S.C. § 1395ii; *see also Bowen v. Mich. Acad. of Physicians et al.*, 476 U.S. 667, 680 (1986) (noting that § 405(h) is "incorporated *mutatis mutandis* by § 1395ii"). Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of

Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Accordingly, § 405(g) is the exclusive source of subject-matter jurisdiction over claims "arising under" the Medicare Act. *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007); *see also Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1047 (11th Cir. 2008) (noting that § 405(h) as incorporated into the Medicare Act strips federal courts of primary federal-question jurisdiction over Medicare matters).

Section 405(h) applies to multiple types of claims, not just claims for monetary benefits. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13–14 (2000). For example, we have held that claims for declaratory and injunctive relief are channeled through § 405(h) when the claimant ultimately seeks reimbursement. *Heckler*, 466 U.S. at 615–16. In other words, we have determined that the district court lacks primary federal-question jurisdiction to review claims for declaratory or injunctive relief under the Medicare Act if only "essentially ministerial details" separate the relief requested and the receipt of benefits. *Id.* at 15.

While Bishins suggests that the exception in *Bowen v. Mich. Acad. of Physicians et al.*, 476 U.S. 667, 680 (1986), for "substantial statutory and constitutional challenges to the Secretary's

administration of Part B of the Medicare program" allows him to circumvent § 405(h) and § 1395ii, Bishins is not raising any such challenge. Instead, Bishins challenges the denial of his individual Medicare claims. Moreover, Bishins fundamentally is seeking monetary relief—namely, payment for his CPAP machine and supplies—by asking that the district court enjoin HHS from continuing to deny him coverage, declare that he is entitled to coverage, and order a hearing for him to challenge the denial of coverage. *See Heckler*, 466 U.S. at 615-16.

While the Supreme Court has assumed that § 405(h) may not foreclose mandamus jurisdiction under 28 U.S.C. § 1361 if there is no other avenue for relief, it nevertheless declined in *Heckler v. Ringer,* 466 U.S. 602, 616–17 (1984), to extend mandamus relief to certain Medicare claimants because § 405(g) "clearly" provided an adequate remedy for challenging the denial of their claims, and the Secretary's denial of claims for payment is a discretionary decision beyond the reach of mandamus.

Second, we conclude that because Bishins did not exhaust his administrative remedies before seeking judicial relief, as required by § 405(g), the district court had no jurisdiction to hear Bishins's claims.

Section 405(h) channels all federal claims related to Medicare through § 405(g), so a claimant may only appeal in federal court from a final decision of the Secretary. *Ill. Council on Long Term Care, Inc.*, 529 U.S. at 13. The Medicare claims-review process consists of six steps—(1) the beneficiary submits his claim to a local

contractor for an "initial determination," (2) he may request a re-determination by the administrative contractor if he is dissatisfied by the initial determination, (3) he may further appeal to a QIC for reconsideration, (4) he may request a hearing and review of the re-consideration determination by an ALJ, (5) he may appeal an unfavorable ALJ decision to the MAC, and (6) he may seek judicial review in federal court if he is unsatisfied with the MAC decision or if the MAC does not render a decision within 90 days of the request for review. *See Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 90–91 (11th Cir. 2022); 42 U.S.C. § 1395ff(d)(2), (3)(B).

Generally, until a claimant exhausts administrative remedies by going through the agency appeals process, federal courts have no subject matter jurisdiction over claims arising out of the Medicare Act. *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 779 (11th Cir. 2002). Additionally, "the bar of § 405(h) reaches beyond ordinary administrative law principles" of ripeness and exhaustion by channeling "virtually all legal attacks through the agency" and prevents the application of the exceptions to ripeness and exhaustion to allow the agency greater opportunity to devise, apply, and interpret policies, regulations, and statutes. *Ill. Council on Long Term Care, Inc.*, 529 U.S. at 12–13. Nevertheless, the Supreme Court has held that § 405(g) consists of two elements, a nonwaivable requirement that a claim for benefits must be presented to the Secretary and a waivable requirement that the claimant fully pursue all administrative remedies. *Heckler*, 466 U.S. at 617. The Secretary may waive the exhaustion requirement if he considers further exhaustion futile, and the court may choose not to defer to the Secretary's

determination that further exhaustion is warranted if the plaintiff presents a claim that is wholly collateral to a claim for benefits and would suffer injury that could not be remedied by retroactive payment of benefits after exhaustion. *Id.* at 617–18.

Bishins argues that the HHS effectively rendered an appealable final decision by placing him into "denied status" with no avenues for administrative appeal and that further attempts at administrative remedies would have been futile. However, as the district court determined, he had other administrative remedies available to him at the time of filing; indeed, he appealed the ALJ's unfavorable decision to the MAC after the district court dismissed his action. Until the MAC reviews Bishins's appeal of the ALJ's determination, Bishins has not exhausted the Medicare claims-review process and received a final decision. *See Banks*, 38 F.4th at 90–91; 42 U.S.C. § 1395ff(d)(2), (3)(B); *Cochran*, 291 F.3d at 779; *Ill. Council on Long Term Care, Inc.*, 529 U.S. at 12–13. Instead of pursuing the administrative remedies established by statute and regulation, Bishins sent multiple grievance and appeal letters to Head, CGS, Maximus, CMS, and the Secretary, which did not constitute appropriate administrative appeals. Moreover, CGS and Head explained to Bishins how to proceed with his administrative appeals, while Chambers explained to him that his best path to relief would be to file a new claim and appeal the denial of that claim because his prior claims were too old to appeal, a path that remains open to Bishins and could secure him his requested hearing.

Additionally, the Secretary has not waived the exhaustion requirement, and we cannot waive the exhaustion requirement either because Bishins's claims for injunctive, mandamus, and declaratory relief all pertain to his Medicare claims for his CPAP machine and supplies and he has been able, thus far, to pay out of pocket for his necessary medical equipment while pursuing his claim. See *Heckler*, 466 U.S. at 617–18.

Third, although Bishins claims that multiple other statutes provide independent bases for subject-matter jurisdiction, there are no other bases for federal courts to exercise jurisdiction over Bishins's claims for injunctive, mandamus, and declaratory relief.

The Declaratory Judgment Act does not, in and of itself, confer jurisdiction upon the federal courts to consider all claims for declaratory relief. *See* 28 U.S.C. §§ 2201–02; *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020). Therefore, an action under the Declaratory Judgment Act must state an independent source of jurisdiction. *Id.* Similarly, the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action. *Califano v. Sanders*, 430 U.S. 99, 106–07 (1977). The Federal Tort Claims Act ("FTCA") waives the government's sovereign immunity in tort suits for the negligent or wrongful acts or omissions of government employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *Monzon v. United States*, 253 F.3d 567, 570 (11th Cir. 2001). But Bishins has not raised a claim sounding in tort and instead claims entitlements under the Medicare Act and violations of

24-10008            Opinion of the Court            15

his constitutional rights.  *See* 28 U.S.C. § 1346(b)(1); *Monzon*, 253 F.3d at 570.

We thus conclude that the district court correctly determined that the district court lacked subject matter jurisdiction to review Bishins's claims for injunctive, mandamus, and declaratory relief because Bishins failed to exhaust his claims as required under § 405(g) and did not establish an alternative basis for subject matter jurisdiction.[3]

### B. FOIA Claim

We now turn to Bishins's second argument.  Bishins contends that the district court erred in determining that Bishins failed to state a FOIA claim because he had not exhausted his administrative remedies in challenging HHS's response.  Although Bishins argues that he actually exhausted his remedies when the agency effectively denied part of his request by failing to produce some responsive records, this Court's precedents make clear that he

---

[3] In a supplemental authority letter, Bishins claims that the *Larson–Dugan* exception to sovereign immunity applies in this case.  That exception is for *ultra vires* acts that are not attributable to the United States.  *See Made in the USA Found. v. United States*, 242 F.3d 1300, 1309 n.20 (11th Cir. 2001) ("[T]he so-called *Larson–Dugan* exception permits suits to go forward alleging that a government's official's actions were unconstitutional or beyond statutory authority, on the grounds that such actions 'are considered individual and not sovereign actions.'" (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949))).  This exception does not apply here because Bishins has sued the Secretary in his official capacity and has not alleged *ultra vires* acts.

neither actually nor constructively exhausted administrative remedies before filing suit.

In *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994), we held that "[t]he FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts." When a FOIA claimant fails to exhaust his administrative remedies, the court must dismiss the unexhausted claim for failure to state a claim. *See id.* at 1367 n.3. The FOIA provides for two types of exhaustion, actual and constructive. *Id.* at 1368. Actual exhaustion occurs when the agency denies a party's request, in full or in part, while constructive exhaustion occurs when the agency fails to meet certain statutory requirements. *Id.* A FOIA claimant constructively exhausts administrative remedies if the agency does not comply with the applicable time limits, which require the agency to notify the FOIA claimant within ten days of its intent to comply or not with the request and the claimant's right to appeal the denial of his request. *Id.* (citing 5 U.S.C. § 552(a)(6)(C)).

However, when a claimant chooses to wait past the ten-day period until an agency responds late, "Congress intended that the administrative route be pursued to its end" without the court interrupting the agency appeal process when it has invested time, resources, and expertise into responding. *Id.* at 1369 (quotation marks omitted). "Where a party has deliberately chosen to wait for a proper response from the agency after initial delay, actual exhaustion must occur before a federal court has jurisdiction to review challenges to administrative action under FOIA." *Id.*

Like the claimant in *Taylor*, Bishins received a late response from the agency, which nevertheless produced responsive documents and did not expressly deny any part of his claim, and he filed suit because he was dissatisfied with the results, stating that the documents were incomplete. *See id.* at 1369–70. Thus, as in *Taylor*, because Bishins waited past the statutory period for a response from HHS, he must pursue administrative remedies to their end. *See id.* Here, Bishins neither actually nor constructively exhausted his administrative remedies. *See id.* We thus conclude that Bishins failed to state a FOIA claim, and the district court properly dismissed it.

### C.  *Constitutional Claims Under Section 1983 and* Bivens

We now turn to the last argument raised by Bishins on appeal. He argues that the district court erred in determining that neither 42 U.S.C. § 1983 nor *Bivens* offers a cause of action suitable to Bishins's constitutional claims.

Section 1983 provides that every person who acts under color of state law and deprives any citizen of the United States of their rights secured by the Constitution and laws shall be liable to the party injured. 42 U.S.C. § 1983. Individuals act under color of state law when exercising power only available to those "clothed with the authority" of the state. *Carswell v. Bay County*, 854 F.2d 454, 456 (11th Cir. 1988) (quotation marks omitted). Thus, § 1983 is an inappropriate cause of action for Bishins's constitutional claims because he is suing a federal official administering a federal program and not an officer acting under color of state law.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *see also Bivens*, 403 U.S. at 397. A plaintiff may bring a *Bivens* action against a federal officer in his individual capacity but typically may not bring a *Bivens* action against a federal agency or a federal officer acting in his official capacity. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 69–71 (2001) (stating that the *Bivens* cause of action is solely for suits against individual officers' personal, unconstitutional actions). As the Supreme Court has stated in the context of 42 U.S.C. § 1983, a suit against a government officer in his official capacity is, in essence, a suit against the government entity that employs him and is subject to the same sovereign immunities as that entity. *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985); *see also Bolin v. Story*, 225 F.3d 1234, 1241–42 (11th Cir. 2000) (stating that "the immunities provided federal officials in *Bivens* actions are coextensive with those provided state officials in § 1983 actions"). Federal agencies are not subject to *Bivens* actions and, absent a waiver, are shielded by sovereign immunity from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 486 (1994). Additionally, a plaintiff may not bring a *Bivens* claim against a government official for the allegedly unconstitutional actions of subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676.

*Bivens* involved a claim akin to that of excessive force where federal agents allegedly shackled and threatened the appellant's family while arresting him for narcotics violations. *Bivens*, 403 U.S.

at 389.  In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court extended *Bivens* to a Fifth Amendment due process violation involving gender discrimination in congressional staff employment.  In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court extended *Bivens* to an Eighth Amendment violation involving the failure to provide adequate medical treatment to a prisoner who suffered from asthma, resulting in his death.  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).  The Supreme Court cautioned that, "[g]iven the notable change in the Court's approach to recognizing implied causes of action," expanding *Bivens* to recognize a cause of action is "a disfavored judicial activity."  *Id*. at 135 (quotation marks omitted).

In *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988), the Supreme Court determined that a *Bivens* remedy against social security program administrators for the improper denial of disability benefits was not appropriate because Congress had designed an elaborate remedial scheme for addressing constitutional violations under statute.  The Supreme Court explained that, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies."  *Id*. at 423.  It declined to address whether the language of § 405(h) specifically foreclosed a *Bivens* remedy because it held that the administrative remedies that must be exhausted under § 405(g)—an initial

determination, *de novo* reconsideration by the agency, a hearing before an ALJ, and a hearing before the appeals council—were extensive enough to preclude a *Bivens* remedy. *Id.* at 423, 424–245, 426–27, 429 n.3.

*Bivens* is an inappropriate cause of action for Bishins's alleged constitutional injuries. Bishins has not named the Secretary in his personal capacity, and a suit against the Secretary in his official capacity is effectively a suit against HHS, which is once again barred by sovereign immunity except to the extent that such immunity is waived by § 405(g). *See Corr. Servs. Corp.,* 534 U.S. at 66, 69–71; *Kentucky,* 473 U.S. at 165–66, 167; *Bolin,* 225 F.3d at 1241–42; *Meyer,* 510 U.S. at 475, 486. Additionally, he cannot bring a *Bivens* action against the Secretary under a theory of *respondeat superior* and has not alleged any direct participation by the Secretary in the handling of his claims. *See Iqbal,* 556 U.S. at 675, 676. A *Bivens* remedy is not available, either for equitable relief or for monetary damages. *See Ziglar,* 582 U.S. at 131, 135; *Schweiker,* 487 U.S. at 423, 427–28.

Bishins's *Bivens* claims also do not fall under one of the three existing types of *Bivens* claims recognized by the Supreme Court and do not present a compelling case for the "disfavored judicial activity" of expanding the *Bivens* remedy. *See Ziglar,* 582 U.S. at 131, 135. The Medicare Act established alternative administrative remedies for constitutional violations, contrary to Bishins's assertion that he and others have no other remedy than a *Bivens* action, and only narrowly provided for judicial review after channeling claims through those administrative remedies. *See id.* at 135, 148. In fact,

Bishins has since availed himself of one of those administrative remedies by appealing the ALJ's decision to MAC after filing suit. Thus, Bishins's *Bivens* claim fails.

### D. Dismissal Without Leave to Amend

Lastly, we address Bishins's argument that the district court erred in dismissing Bishins's claims without leave to amend. Generally, a plaintiff proceeding *pro se* must receive at least one opportunity to amend the complaint if he or she might be able to state a claim by doing so before the district court dismisses a complaint with prejudice. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291–92 (11th Cir. 2018); *see also Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132–33 (11th Cir. 2019) (noting that in some situations, further leniency—or "an extra dose of grace"—may be warranted "in recognition of the difficulty in proceeding *pro se*"). But a district court need not allow amendment in the event of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Additionally, we do not extend the same liberal rules to licensed attorneys that are ordinarily applied to ordinary *pro se* parties. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1306 n.1 (11th Cir. 2018). Bishins is a licensed attorney, and he has already amended his complaint once. Because Bishins cannot cure the issues of jurisdiction and nonexhaustion with a more carefully drafted complaint, we conclude that the district court did not err in dismissing Bishins's claims without leave to amend.

## IV.   CONCLUSION

For the reasons stated, we affirm the district court's order dismissing Bishins's complaint without leave to amend.

**AFFIRMED.**